# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **DIECE-LISA INDUSTRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:12-CV-00400-MHS** |
| | § | |
| **DISNEY ENTERPRISES, INC., d/b/a** | § | |
| **WALT DISNEY STUDIOS MOTION** | § | |
| **PICTURES; PIXAR a/k/a PIXAR** | § | |
| **ANIMATION STUDIOS; THE WALT** | § | |
| **DISNEY COMPANY d/b/a DISNEY** | § | |
| **STORES; DISNEY STORE USA, LLC and** | § | |
| **DISNEY SHOPPING, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

      DIECE-LISA INDUSTRIES, INC. ("DLI" or "Plaintiff") files this First Amended Original Complaint complaining of DISNEY STORE USA, LLC and DISNEY SHOPPING, INC. (collectively referred to as Defendants), and for causes of action shows as follows:

### PARTIES

      1.    Diece-Lisa Industries, Inc. is a corporation organized under the laws of the State of New Jersey. DLI maintains its principal place of business located at 36 Cecelia Avenue, Cliffside Park, NJ 07010.

      2.    Disney Store USA, LLC ("Disney Store") is a limited liability corporation organized under the laws of the State of Delaware. Disney Store may be served with process by agreement of the parties by serving the attorney for Disney Store, Jason E. Mueller, Locke Lord, LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201.

3.      Disney Shopping, Inc. ("Disney Shopping") is a corporation organized under the laws of the State of Delaware.  Disney Shopping may be served with process by agreement of the parties by serving the attorney for Disney Store, Jason E. Mueller, Locke Lord, LLP, 2200 Ross Avenue, Dallas, Texas 75201.

## VENUE AND JURISDICTION

4.      The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1338 because the Plaintiff asserts claims for damages pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* ("Lanham Act").This Court has supplemental and/or pendant jurisdiction under 28 U.S.C. 1367 and 1338(b) because any state common law claims asserted herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      The Defendants all have sufficient minimum contacts with the state of Texas in order to subject them to personal jurisdiction because all of the Defendants transact business within the State of Texas and in this District such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391. The events giving rise to this action, including actual infringement as set forth herein,  have occurred in the Eastern District of Texas such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. 1391.

## FACTS AND ALLEGATIONS

6.      DLI is the creator and/or owner of Lots of Hugs™ Bear.

7.      United States Patent No. 7,410,403 (the "Patent"), entitled "Hugging Toy" was duly and legally issued by the United States Patent and Trademark Office on August 12, 2008, after full and fair examination.

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**                                    **PAGE 2**

8.     DLI is the assignee of all rights, title and interest in and to the Patent and possesses all rights of recovery under the Patent, including the right to recover damages for past infringements.  A true and correct copy of the Patent No. 7410403 is attached as Exhibit "A". However, the patent essentially is for a huggable bear children's toy.

9.     Trademark Serial No. 77158139 (the "Trademark"), for a Word Mark entitled "Lots of Hugs" was duly and legally issued to by the United States Patent and Trademark Office on January 1, 2008, after full and fair examination. A true and correct copy of this Trademark Serial No. 77158139 is attached hereto as Exhibit "B".

10.     DLI is the owner of all rights, title and interest in and to the Trademark and possesses all rights of recovery under the Trademark, including the right to recover damages for past infringement.  *See* Exhibit "B".

11.     In 1994, DLI created the product initially referred to as "Snugglers" and in February 1995, DLI licensed the product to a company known as Happiness Express, Inc. In 1995, various patents and trademarks were filed by Happiness Express, Inc. and in February 1996, Happiness Express, Inc. introduced the product at various Toy Fairs as "LOTS OF HUGS"™ . The product is a stuffed toy bear. Television commercials marketing the product began to run in 1996 and sales commenced in mass markets, as well as specialty markets.

12.     In 1996, Happiness Express, Inc. filed for bankruptcy court protection and in September 1996, DLI terminated the Happiness Express, Inc. license for the product. On November 4, 1996, the Bankruptcy Court assigned all intellectual property rights back to DLI.

13.     Between 1997 and 2007, DLI developed, produced and sold Lots of Hugs™ products, including "Applause for Disney Bear in the Big Blue House". *See* Exhibit "B".

14.     On April 17, 2007, LOTS OF HUGS™ was registered again in preparation for additional licensing and use.

15.     In August 2007, Lots of Hugs™ licensed rights to Lots of Hugs™ to Concord Industries for marketing, selling and distribution of the product during the U.S. Olympics.

16.     In August 2007, QVC launched Lots of Hugs™ Olympic Panda Bears sales, marketing and promotional activities authorized by DLI.

17.     In August 2008, QVC launched Lots of Hugs™ Olympic Panda Bears for the Beijing Olympics.

18.     Between 2008 and 2011, Lots of Hugs™ continued marketing, sales and development through a website run by DLI. The URL of the website is: www.lotsofhugs.org.

19.     Upon information and belief, Pixar and Disney jointly own all rights and interests in a Disney produced the movie Toy Story 3.  Toy Story 3 is a 2010 American 3D computer-animated comedy-adventure film. Toy Story 3 is the third installment in the Toy Story series. Toy Story 3 was produced by Defendant Pixar, and released by Walt Disney Pictures.  Toy Story was directed by Lee Unkrich.  The film was released worldwide from June through October 2010 in Disney Digital 3-D, RealD and IMAX 3D.

20.     The Toy Story 3 plot focused on the toys Woody, Buzz Lightyear, and their friends, dealing with an uncertain future as their owner, Andy, prepares to leave for college.  At one point in the story the toys are discarded and "escape" to the Sunnyside Day Care Center. The characters, Andy's toys, are welcomed by the many toys at Sunnyside and given a tour of the Day Care Center by various characters including one named, Lots-O'-Huggin' Bear a/k/a Lotso.

21.     The plot continues with the toys enjoying their new home, leaving the character Woody alone in an attempt to return to Andy.  The character Woody's escape attempt fails and he

is found outside by a little girl, Bonnie, who takes him home and plays with him along with her other toys, who are well-treated, happy, and who readily welcome Woody.  Woody is relieved until he hears about Lotso's back story from Chuckles the sad clown.

22.     The character "Lotso", along with Chuckles and Big Baby, were once accidentally lost by their original owner, Daisy. The three found their way back to Daisy's home, but Lotso saw that he had been replaced with another Lots-O'-Huggin' Bear.

23.     Though Chuckles realized the truth, Lotso convinced Big Baby that they had all been replaced. The three of them made their way to Sunnyside, which Lotso took over as his personal fiefdom, running it like a prison and a military base at night. Worried for his friends, Woody hurries back to the daycare to find that they have been confined to the room with the youngest toddlers.

24.     After Andy's toys' first day spent at Sunnyside, Buzz discovers that the daycare is like a prison during night, and is captured by Lotso's gang, who gains his allegiance by having him reverted to demonstration mode, restoring his original "Space Ranger" persona from the first movie.

25.     The other toys discover that Woody was right about Andy, but Lotso, with Buzz's help, prevents them from leaving the daycare.

26.     Lotso is a new and integral character to the plot line of Toy Story 3.

27.     Toy Story 3 was an extremely successful motion picture. Toy Story 3 broke records as the biggest opening day North American gross for an animated picture.  Toy Story 3 was the highest-grossing opening weekend for any Pixar film.  The film was the highest-grossing film of 2010 in the United States and Canada, and the highest-grossing film of 2010 worldwide. Toy Story 3 became the first ever animated film in history to make over $1 billion worldwide.

Toy Story 3 was one of the highest-grossing films of all time.  Toy Story 3 was nominated for five Academy Awards, including Best Picture, Best Adapted Screenplay, and Best Sound Editing.  Toy Story 3 won the Academy Awards for Best Animated Feature and Best Original Song.

28.     Upon information and belief, one or more of the Defendants own and operate the Disney Store located at the Stonebriar Mall in Frisco, Texas, which is located within the Eastern District of Texas.  This store sells, among other items, Lots-O'-Huggin' Bear merchandise including but not limited to the bear depicted in the photograph attached as Exhibit "C".

29.     Upon information and belief, one or more of the Defendants own and operate Disney Stores at various locations around the United States, and in locations outside the United States.

30.     Upon information an belief, one or more of the Defendants sell Lots-O'-Huggin' Bear merchandise throughout the United States in Disney Stores, at Disney Amusement Parks and at the stores mentioned above, along with Toy Story 3 movies, DVD's and related material.

31.     In addition, upon information and belief, one or more of the Defendants, sell, market, distribute and advertise Lots-O'-Huggin Bear merchandise through various distribution vehicles including the internet.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:  TRADEMARK INFRINGEMENT

32.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

33.     Trademark Serial No. 77158139 (the "Trademark"), for a Word Mark entitled "Lots of Hugs" was duly and legally issued to by the United States Patent and Trademark Office on January 1, 2008, after full and fair examination.  DLI is the owner of all rights, title and

interest in and to the Trademark and possesses all rights of recovery under the Trademark, including the right to recover damages for past and continuing infringement.  *See* Exhibit "B". This trademark has been used continuously in conjunction with the Lots of Hugs stuffed children's bear sold, marketed, licensed and merchandised by DLI.

34.     Upon information and belief, Pixar and Disney jointly produced the movie Toy Story 3.

35.     Upon information and belief, TWDC owns and operates the Disney Store which sells the Lots-O'-Huggin' Bear merchandise.

36.     Upon information and belief, Defendants are infringing  on the Trademark under 15 U.S.C. § 1114 by performing, without authority, one or more of the following acts:  (i) colorably imitating a registered mark and applying such colorable imitation to labels, signs, prints, packages, products, wrappers, movies,  receptacles or advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of goods, products, movies and/or services which such use is likely to cause confusion, or to cause mistake, or to deceive.

37.     DLI has been damaged as a result of Defendants infringing conduct.   Thus, Defendants are liable to DLI in an amount that adequately compensates DLI for its infringement, and is entitled to  recover from the Defendants all statutory and/or actual damages Plaintiff has sustained and will sustain as a result of Defendants wrongful acts, including but not limited to Defendants' profits which were obtained as a result of the infringement as well as recovery of Plaintiff's attorney's fees.

### SECOND CAUSE OF ACTION:  FEDERAL TRADEMARK DILUTION

38.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

39.     The Defendants use of Plaintiff's mark on the web, in their advertising and in their marketing efforts, dilutes the distinctive quality of the Plaintiff's mark in violation of the Federal Trademark Dilution Act, 15 U.S.C. §1125(c).

40.     Plaintiff owns the mark as identified above.  Plaintiff uses the mark continuously and conspicuously in all of its marketing and advertising and has spent substantial sums and effort and has achieved substantial public recognition and is well known throughout the United States and to a degree worldwide.

41.     Defendants' commercial use of the name a "Lots-O-Huggin' Bear" in its marketing and advertisements and in its everyday business conduct, will lessen and impede the Plaintiff's ability to identify itself in the marketplace and to distinguish itself with respect to Plaintiffs' goods and services that it provides to consumers.   Accordingly, Plaintiff is entitled to injunctive relief, actual damages, and statutory damages.

### THIRD CAUSE OF ACTION:  FEDERAL UNFAIR COMPETITION

42.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

43.     The acts of the Defendants complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1117(a).

44.     Plaintiff should be entitled to injunctive relief and to recover actual damages and statutory damages, including its attorney's fees.

### FOURTH CAUSE OF ACTION:  INFRINGEMENT UNDER TEXAS COMMON LAW

45.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

46.     The acts of infringement committed by the Defendants violate the common law of the State of Texas the Plaintiff is entitled to recover all permissible damages as a result.

### FIFTH CAUSE OF ACTION:  DILUTION  UNDER TEXAS LAW

47.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

48.     The acts of infringement committed by the Defendants also constitute dilution of the Plaintiff's distinctive marks in violation of the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code §16.29 and the Plaintiff is entitled to recover an injunction on account thereof.

### CONDITIONS PRECEDENT

49.     All conditions precedent for suit have occurred.

### RESPONDEAT SUPERIOR AND VICARIOUS INFRINGEMENT

50.     At all times material hereto, all of the agents, affiliates, subsidiaries, partners, venturers, servants, and/or employees of a Defendants who were connected with the occurrence made the subject of this suit (and each Defendant, to the extent employed by another Defendant or its affiliate or subsidiary), were acting within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment. Therefore, the named Defendants are liable for the acts and omissions under the doctrines of *Respondeat Superior* and vicarious liability.

### JURY DEMAND

51.     Plaintiff demands a trial by jury.

## **DAMAGES**

52.     As a result of the wrongful conduct herein, Plaintiff seeks the recovery of and from Defendants of actual damages, treble damages, punitive damages, reasonable attorney's fees on account of this being an exceptional case, and costs of court; and such other and further relief to which Plaintiff may be entitled.

***For the reasons stated above***, Plaintiff prays that the Defendants be served with citation and other required process, and that judgment be entered finding and awarding Plaintiff the following:

1.     That the Defendants have infringed Plaintiffs' Trademark;

2.     All damages, actual or otherwise, including profits, as a result of the infringement and wrongful conduct of Defendants;

3.     All damages actual or otherwise as a result of a finding that the infringement was willful;

4.     All costs and attorney's fees;

5.     Exemplary damages; and

6.     All such other further relief at law or in equity to which Plaintiff may be entitled.

Respectfully submitted,


*/s/ Robert L. Chaiken*

Robert L. Chaiken
Attorney-in-Charge
State Bar No.  04057830
Carrie E. Putterman
State Bar No. 24074921
CHAIKEN & CHAIKEN, P.C.
One Galleria Tower
13355 Noel Road, Suite 600
Dallas, Texas 75240
(214) 265-0250 telephone
(214) 265-1537 facsimile

HUNTER J. SHKOLNIK (4854)
* Pro Hac Vice Motion Pending
NAPOLI BERN RIPKA SHKOLNIK LLP
350 5th Avenue, Suite 7413
New York, New York  10118
(212) 267-3700 telephone
(212) 587-0031 facsimile

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Plaintiff's First Amended Original Complaint has been electronically served upon all counsel of record via the Court's CM/ECF filing system on the 10th day of December, 2012.

*/s/ Robert L. Chaiken*
Robert L. Chaiken

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**                    **PAGE 12**