IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIECE-LISA INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:12-CV-00400-MHS |
| | § | |
| DISNEY STORE USA, LLC and | § | |
| DISNEY SHOPPING, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE:

DIECE-LISA INDUSTRIES, INC. files this Second Amended Complaint complaining of DISNEY STORE USA, LLC and DISNEY SHOPPING, INC. (collectively referred to as Defendants), and for causes of action shows as follows:

### PARTIES

1.    Plaintiff Diece-Lisa Industries, Inc. ("DLI" or "Plaintiff") is a corporation organized under the laws of the State of New Jersey. DLI maintains its principal place of business located at 36 Cecelia Avenue, Cliffside Park, NJ 07010.

2.    Defendant Disney Store USA, LLC ("Disney Store") is a limited liability corporation organized under the laws of the State of Delaware.  Disney Store may be served with this Plaintiff's Second Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201.

3.    Defendant Disney Shopping, Inc. ("Disney Shopping") is a corporation organized under the laws of the State of Delaware.  Disney Shopping may be served with this Plaintiff's Second Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue,

Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because the Plaintiff asserts claims for damages pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act").   This Court has supplemental and/or pendent jurisdiction under 28 U.S.C. §§ 1367 and 1338(b) because any state common law claims asserted herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Defendant Disney Store and Defendant Disney Shopping (collectively "Defendants") have sufficient minimum contacts with the state of Texas in order to subject them to personal jurisdiction because all of the Defendants transact business within the State of Texas and in this District such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.  Substantial events giving rise to this action, including actual infringement as set forth herein,  have occurred in the Eastern District of Texas such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.  Jurisdiction and venue have not been contested by these Defendants.

## PLAINTIFF'S RIGHTS

6.      Plaintiff DLI is the creator and/or owner of "Lots of Hugs" stuffed toy bears.

7.      United States Patent No. 7,410,403 (the "Patent"), entitled "Hugging Toy" was duly and legally issued by the United States Patent and Trademark Office on August 12, 2008, after full and fair examination.

8.      Plaintiff DLI is the assignee of all rights, title and interest in and to the Patent.  A true and correct copy of the U.S. Patent No. 7,410,403 is attached as Exhibit "A."  This patent is

directed to a huggable bear children's toy.

9.      U.S. Trademark Serial No. 77158139 for the word mark "Lots of Hugs" was duly and legally issued to Plaintiff DLI by the United States Patent and Trademark Office on January 1, 2008, as U.S. Trademark Registration No. 3,361,849 (the "'849 Registration"), after full and fair examination.  A true and correct copy of the '849 Registration is attached hereto as Exhibit "B."

10.     Plaintiff DLI is the owner of all rights, title and interest in and to the mark "Lots of Hugs" and the '849 Registration and all appertaining good will and possesses all rights of recovery under the '849 Registration, including the right to recover damages for past infringement.

11.     In 1994, Plaintiff DLI created a soft pillowy stuffed animal initially referred to as "Snugglers."  In February 1995, DLI licensed the "Snugglers" product to Happiness Express, Inc.  In 1995, various trademarks were filed by Happiness Express, Inc., including an Intent to Use application for "Lots of Hugs" (as filed on October 26, 1995, which resulted in U.S. Trademark Registration No. 2,120,326 [the "'326 Registration"] as issued on December 9, 1997, as shown in the attached Exhibit "C"). . In December 1995, Happiness Express, Inc. began the marketing and sale of "Lots of Hugs" stuffed toy bears.  By February 1996, Happiness Express, Inc. introduced its "Lots of Hugs" stuffed toy bear product at various Toy Fairs.  Happiness Express, Inc. began to broadcast television commercials marketing the "Lots of Hugs" stuffed toy bear product in 1996 (Exhibit "D") and sales commenced in mass markets, as well as specialty markets.

12.     In 1996, Happiness Express, Inc. filed for bankruptcy court protection.  In September 1996, Plaintiff DLI terminated the Happiness Express, Inc. license for the product.

On November 4, 1996, the Bankruptcy Court assigned all Happiness Express, Inc. intellectual property rights to Plaintiff DLI, including the '326 Registration. The '326 Registration was cancelled by the U.S. Patent and Trademark Office on September 11, 2004, because Plaintiff DLI did not file an acceptable Section 8 [15 U.S.C. § 1058(a)(1)] Declaration.

13.     Between 1997 and 2007, Plaintiff DLI developed, produced and sold "Lots of Hugs" stuffed toy bear products.  Further, Plaintiff DLI licensed its "hugging technology" to Applause—affiliated with Henson/Disney—for its sale of the Jim Henson's "Bear in the Big Blue House" huggable stuffed bear product. *See* Exhibit "E."

14.     As noted above, on April 17, 2007, Plaintiff DLI again filed an application for U.S. Trademark registration of its "Lots of Hugs" mark (which became the '849 Registration on January 1, 2008) in preparation for additional licensing and use.

15.     In August 2007, DLI licensed its "Lots of Hugs" mark to Concord Industries for marketing, selling and distribution of bear products during the U.S. Olympics.

16.     In August 2007, QVC initially launched its nationally televised "Lots of Hugs" Olympic Panda Bears sales, marketing and promotional activities, as authorized by Plaintiff DLI (see Exhibit "F").

17.     In August 2008, QVC again launched a nationally televised sales campaign for "Lots of Hugs" Olympic Panda Bears for the Beijing Olympics.  The entire supply of in excess of 1000 available "Lots of Hugs" bears were quickly sold.

18.     Between 1996 to date, Plaintiff DLI and its licensees, have continuously marketed and sold "Lots of Hugs" stuffed toy bears.  Since 2008, Plaintiff DLI has further nationally marketed and promoted its "Lots of Hugs" stuffed bears through its website at www.lotsofhugs.org.

## DEFENDANTS' ACTIONS

19.     Upon information and belief, in about 2006, The Walt Disney Company ("Disney") acquired Pixar Animation Studios as one of its subsidiaries.

20.     Upon information and belief, Disney owns all rights and interests in the Pixar created, developed and produced movie *Toy Story 3* and its characters. *Toy Story 3* is a 2010 American 3D computer-animated comedy-adventure film. *Toy Story 3* is the third installment in the *Toy Story* series. *Toy Story 3* was released by Disney. *Toy Story 3* was directed by Lee Unkrich. The film was released worldwide from June through October 2010 in Disney Digital 3-D, RealD, and IMAX 3D (Exhibit "G").

21.     The *Toy Story 3* plot focused on the toys Woody, Buzz Lightyear, and their friends, dealing with an uncertain future as their owner, Andy, prepares to leave for college.  At one point in the story the toys are discarded and "escape" to the Sunnyside Day Care Center. The characters, Andy's toys, are welcomed by the many toys at Sunnyside and given a tour of the Day Care Center by various characters including one named "Lots-O'-Huggin'" bear a/k/a "Lotso" bear.

22.     The plot continues with the toys enjoying their new home, leaving the character Woody alone in an attempt to return to Andy.  The character Woody's escape attempt fails and he is found outside by a little girl, Bonnie, who takes him home and plays with him along with her other toys, who are well-treated, happy, and who readily welcome Woody.  Woody is relieved until he hears about "Lots-O'-Huggin'" bear a/k/a "Lotso" bear's previous history from Chuckles, the sad clown.

23.     The character "Lotso" bear, along with Chuckles and Big Baby, were once accidentally lost by their original owner, Daisy.  The three found their way back to Daisy's home,

but "Lotso" saw that he had been replaced with another "Lots-O'-Huggin'" bear.

24.     Though Chuckles realized the truth, "Lots-O'-Huggin'" bear a/k/a "Lotso" bear convinced Big Baby that they had all been replaced.  The three of them made their way to Sunnyside, which "Lotso" bear took over as his personal fiefdom, running it like a prison and a military base at night.  Worried for his friends, Woody hurries back to the daycare to find that they have been confined to the room with the youngest toddlers.

25.     After Andy's toys' first day spent at Sunnyside, Buzz discovers that the daycare is like a prison during night, and is captured by "Lotso's" gang, who gains his allegiance by having him reverted to demonstration mode, restoring his original "Space Ranger" persona from the first movie.

26.     The other toys discover that Woody was right about Andy, but "Lots-O'-Huggin'" bear a/k/a "Lotso," with Buzz's help, prevents them from leaving the daycare.

27.     "Lots-O'-Huggin'" bear a/k/a "Lotso" bear is a new and integral character to the plot line of *Toy Story 3* and is its principal antagonist.

28.     *Toy Story 3* was an extremely successful motion picture.  *Toy Story 3* broke records as the biggest opening day North American gross for an animated picture.  *Toy Story 3* was the highest-grossing opening weekend for any Pixar film.  The film was the highest-grossing film of 2010 in the United States and Canada, and the highest-grossing film of 2010 worldwide. *Toy Story 3* became the first ever animated film in history to make over $1 billion in worldwide ticket sales.  *Toy Story 3* merchandise has generated in excess of $7 billion at retail.  *Toy Story 3* was one of the highest-grossing films of all time.  *Toy Story 3* was nominated for five Academy Awards, including Best Picture, Best Adapted Screenplay, and Best Sound Editing.  *Toy Story 3* won the Academy Awards for Best Animated Feature and Best Original Song (Exhibit "G").

29.     Upon information and belief, Disney is related to and/or the owner of Defendant Disney Store and Defendant Disney Shopping.

30.     Upon information and belief, one of Defendant Disney Store's retail outlets is located at the Stonebriar Mall in Frisco, Texas, which is located within the Eastern District of Texas.  This store, as well as other retail outlets of Defendant Disney Stores worldwide, have sold and sell, among other items, "Lots-O'-Huggin'" and "Lotso" bear merchandise including but not limited to the bear depicted in the photographs attached as Exhibit "H."  Upon information and belief, Defendant Disney Stores have retail stores at various North American locations around the United States and Canada, as well as other locations outside the United States, including Europe and Japan.

31.     Upon information and belief, Disney Shopping sells "Lots-O'-Huggin'" and "Lotso" bear merchandise throughout the United States and elsewhere.

32.     In addition, upon information and belief, one or more of the Defendants sell, market, distribute and advertise "Lots-O'-Huggin'" and "Lotso" bear merchandise through various sales media, including the internet, sales through retail outlets (such as Toys-R-Us and Walmart) and otherwise.

33.     Upon information and belief, Defendants' sales of "Lots-O'-Huggin'" and "Lotso" bear merchandise is a part of the $7 billion in retail *Toy Story 3* merchandise sales (Exhibit "G").

## INTERACTIVE GROUP'S FEAR OF DISNEY

34.     In about July 2011, Plaintiff DLI entered into a License Agreement with Interactive Group ("IG") for IG to market and sell Plaintiff DLI's bear product.  IG was fearful to use the "Lots of Hugs" mark for the DLI licensed bear products in view of the worldwide

success of the *Toy Story 3* movie—fearing consumer confusion with Disney's "Lots-O'-Huggin'" bear a/k/a "Lotso" bear and possible litigation with Disney if IG should market and sell "Lots of Hugs" bears.  As a consequence and a condition of the license, IG required that the licensed bears be marked "hugalots" instead of "Lots of Hugs."

35.    DLI filed an application for U.S. Trademark for "hugalots," which resulted in U.S. Trademark Registration No. 4,262,625 (the "'625 Registration"), a copy of which is attached as Exhibit "I."

36.    IG, and its licensee, have marketed and sold licensed "hugalots" bears, since July 2011.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:  FEDERAL TRADEMARK INFRINGEMENT

37.    Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

38.    Upon information and belief, Defendants Disney Store and Disney Shopping are infringing on the Plaintiff's '849 Registration and its related "Lots of Hugs" mark under 15 U.S.C. § 1114 by performing, without authority, the acts of colorably imitating a registered mark and applying such colorable imitation to labels, signs, prints, packages, products, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of goods, products and/or services, which such use is likely to cause confusion, or to cause mistake, or to deceive.

39.    Because of the success of the *Toy Story 3* movie worldwide, Plaintiff DLI is viewed as a junior user of the mark, when in fact it is the senior user of the mark "Lots of Hugs." Plaintiff DLI's valuable property rights in and to its "Lots of Hugs" mark and '849 Registration have been destroyed by the overwhelming worldwide success of Disney's *Toy Story 3* movie,

and the related infringing "Lots-O'-Huggin'" and "Lotso" bear sales by Defendants.

40.     Potential customers will likely improperly associate or confuse Defendants' "Lots-O'-Huggin'" and "Lotso" bears with Plaintiff DLI's "Lots of Hugs" bears.   In fact, Plaintiff DLI has been required to develop a new mark due to the likelihood of confusion with and the concern that Plaintiff DLI's "Lots of Hugs" bears will be improperly associated or confused with the Defendants' "Lots-O'-Huggin'" and "Lotso" bears.

41.     Plaintiff DLI has been damaged as a result of Defendants' infringing conduct. Thus, Defendants are liable to Plaintiff DLI in an amount that adequately compensates Plaintiff DLI for its infringement.  Plaintiff DLI is entitled to recover Defendants' profits as a result of Defendants' wrongful acts, including but not limited to multiple damages occasioned as a result of such infringement, as well as recovery of Plaintiff's reasonable attorney's fees.  Plaintiff DLI is entitled to enjoin as such acts of infringement of Defendants.

## SECOND CAUSE OF ACTION:  FEDERAL UNFAIR COMPETITION

42.     Plaintiff adopts and re-alleges each paragraph above as if set forth herein.

43.     The acts of the Defendants Disney Store and Disney Shopping complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

44.     Plaintiff is entitled to injunctive relief and to recover at least Defendants' profits. As this is an exceptional case, Plaintiff DLI is entitled to an award of a multiple of such profits and its reasonable attorney's fees.

## JURY DEMAND

45.     Pursuant to Rule 38(b), FRCP, Plaintiff DLI demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff DLI prays that judgment be entered against Defendants finding and awarding

Plaintiff DLI the following:

1. That the Defendants have infringed Plaintiff's '849 Registration and mark for "Lots of Hugs;"

2. All damages, actual or otherwise, including Defendants' profits, be awarded to Plaintiff DLI as a result of the infringement and wrongful conduct of Defendants, per 15 U.S.C. §1117(a);

3. In accordance with the circumstances of this case, three times Defendants' profits be awarded to Plaintiff DLI, per 15 U.S.C. § 1117(a);

4. Finding this case to be exceptional, and awarding Plaintiff its reasonable attorney's fees, per 15 U.S.C. § 1117(a);

5. An injunction enjoining all future use by Defendants of "Lots-O'-Huggin'" and "Lotso" or any other mark confusingly similar as to Plaintiff's "Lots of Hugs" mark, per 15 U.S.C. § 1116;

6. The destruction of all of Defendants' products that include or refer to or related to the "Lots-O'-Huggin'" or "Lotso" bear products, per 15 U.S.C. § 1118;

7. All costs of this action; and,

8. All such other further relief at law or in equity to which Plaintiff may be entitled.

Respectfully submitted,


/s/ Richard L. Schwartz
Richard L. Schwartz
Texas Bar No. 17869500
rschwartz@whitakerchalk.com
Thomas F. Harkins
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501


/s/ Wesley Hill
Wesley Hill
Texas Bar No. 24032294
wh@wsfirm.com
T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com

**WARD & SMITH LAW FIRM**
P.O. Box 1231
Longview, Texas 75606-1231
Phone: (903) 757-6400
Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF
DIECE-LISA INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed electronically and, therefore, was served on Counsel for Defendants, identified below, via the Court's electronic service system on this 27th day of January, 2014.

Roy W. Hardin
Jason E. Mueller
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Phone:  214-740-8000
Fax:      214-740-8800
rhardin@lockelord.com
jmueller@lockelord.com
**Attorneys for Defendants**
**Disney Store USA, LLC and**
**Disney Shopping, Inc.**

/s/ Richard L. Schwartz
Richard L. Schwartz