# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DIECE-LISA INDUSTRIES, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 2:12-CV-00400-MHS |
| | § | |
| DISNEY STORE USA, LLC, | § | Civil Action No. 2:14-CV-00070-MHS |
| DISNEY SHOPPING, INC., | § | |
| DISNEY ENTERPRISES, INC., | § | |
| DISNEY CONSUMER PRODUCTS, INC., | § | |
| BUENA VISTA HOME | § | |
| ENTERTAINMENT, INC., WALT DISNEY | § | |
| STUDIOS MOTION PICTURES, BUENA | § | |
| VISTA THEATRICAL GROUP, LTD., | § | **A JURY IS DEMANDED** |
| DISNEY INTERACTIVE STUDIOS, INC., | § | |
| DISNEY LICENSED PUBLISHING- | § | |
| DISNEY BOOK GROUP, LLC, WALT | § | |
| DISNEY RECORDS, DISNEY | § | |
| DESTINATIONS, LLC, WALT DISNEY | § | |
| PARKS & RESORTS U.S., INC., | § | |
| MAGICAL CRUISE CO., LTD., | § | |
| AND MAGIC KINGDOM, INC., | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE:

DIECE-LISA INDUSTRIES, INC. files this Third Amended Complaint complaining of DISNEY STORE USA, LLC, DISNEY SHOPPING, INC., DISNEY ENTERPRISES, INC., DISNEY CONSUMER PRODUCTS, INC., BUENA VISTA HOME ENTERTAINMENT, INC., WALT DISNEY STUDIOS MOTION PICTURES, BUENA VISTA THEATRICAL GROUP, LTD., DISNEY INTERACTIVE STUDIOS, INC., DISNEY LICENSED PUBLISHING-DISNEY BOOK GROUP, LLC, WALT DISNEY RECORDS, DISNEY DESTINATIONS, LLC, WALT DISNEY PARKS & RESORTS U.S., INC., MAGICAL

CRUISE CO., LTD., and MAGIC KINGDOM, INC. (collectively referred to as Defendants), and for causes of action shows as follows:

**PARTIES**

1.      Plaintiff Diece-Lisa Industries, Inc. ("DLI" or "Plaintiff") is a corporation organized under the laws of the State of New Jersey. DLI maintains its principal place of business located at 36 Cecelia Avenue, Cliffside Park, NJ 07010.

2.      Defendant **Disney Store USA, LLC ("Disney Store")** is a limited liability corporation organized under the laws of the State of Delaware.  Disney Store may be served with this Plaintiff's Third Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201.

3.      Defendant **Disney Shopping, Inc. ("Disney Shopping")** is a corporation organized under the laws of the State of Delaware.  Disney Shopping may be served with this Plaintiff's Third Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue, Dallas, Texas 75201.

4.      Defendant **Disney Enterprises, Inc. ("DEI")** is a corporation organized under the laws of the State of Delaware.  Disney Enterprises, Inc. may be served with this Plaintiff's Third Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue, Dallas, Texas 75201.

5.      Defendant **Disney Consumer Products, Inc. ("DCP")** is a corporation organized under the laws of Delaware.  Disney Consumer Products, Inc. may be served with this Plaintiff's Third Amended Complaint by serving its counsel, Locke Lord, LLP, 2200 Ross Avenue, Dallas, Texas 75201.

6.      Defendant **Buena Vista Home Entertainment, Inc. ("BVHE")** is a corporation organized under the laws of the State of California, having its principal place of business in Burbank, California.  BVHE may be served through its registered agent, Marsha L. Reed, 500 S. Buena Vista Street, Burbank, California 91521.

7.      Defendant **Walt Disney Studios Motion Pictures ("WDSMP")**, a division of ABC, Inc., is a corporation organized under the laws of the State of Delaware, having its principal place of business in Burbank, California.  WDSMP may be served through its registered agent, Marsha L. Reed, 500 S. Buena Vista Street, Burbank, California 91521.

8.      Defendant **Buena Vista Theatrical Group, Ltd. ("BVTG")** is a corporation organized under the laws of the State of New York, having its principal place of business in New York, New York.  BVTG may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

9.      Defendant **Disney Interactive Studios, Inc. ("DISI")** is a corporation organized under the laws of the State of California, having its principal place of business in Burbank, California.  DISI may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

10.     Defendant **Disney Licensed Publishing – Disney Book Group, LLC ("DLP")** is a corporation organized under the laws of the State of Delaware, having its principal place of business in Burbank, California.  DLP may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

11.     Defendant **Walt Disney Records ("WDR")**, a division of ABC, Inc., is a corporation organized under the laws of the State of California, having its principal place of business in Burbank, California.  WDR may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

12.     Defendant **Disney Destinations, LLC ("DD")** is a limited liability company organized under the laws of the State of Florida, having its principal place of business in Lake Buena Vista, Florida.  DD may be served through its registered agent, Jeffrey S. Craigmile, 1375 Buena Vista Drive, 4th Floor North, Lake Buena Vista, Florida 32830.

13.     Defendant **Walt Disney Parks & Resorts U.S., Inc. ("WDPR")** is a corporation organized under the laws of the State of Florida, having its principal place of business in Lake Buena Vista, Florida.  WDPR may be served through its registered agent, Jeffrey S. Craigmile, 1375 Buena Vista Drive, 4th Floor North, Lake Buena Vista, Florida 32830.

14.     Defendant **Magical Cruise Co., Ltd. ("MCC")** is a foreign corporation organized under the laws of England, having its principal place of business in Burbank, California.  MCC may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

15.     Defendant **Magic Kingdom, Inc. ("MKI")** is a corporation organized under the laws of the State of California, having its principal place of business in Burbank, California.  MKI may be served through its registered agent, Corporation Service Company d/b/a Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

16.     Defendant Disney Store, Defendant Disney Shopping, Defendant DEI, Defendant DCP, Defendant BVHE, Defendant WDSMP, Defendant BVTG, Defendant DISI, Defendant DLP, Defendant WDR, Defendant DD, Defendant WDPR, Defendant MCC, and Defendant MKI are sometimes hereinafter collectively referred to as "Defendants," and are collectively owned directly or indirectly by The Walt Disney Company, a holding company hereinafter referred to as "Disney."

## JURISDICTION AND VENUE

17.     The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because the Plaintiff asserts claims for damages pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act").   This Court has supplemental and/or pendent jurisdiction under 28 U.S.C. §§ 1367 and 1338(b) because any state common law claims asserted herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000.00.

18.     Generally, Defendants have sufficient minimum contacts with the state of Texas in order to subject them to personal jurisdiction because all of the Defendants transact business within the State of Texas and in this District such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.   Substantial events giving rise to this action, including actual infringement as set forth herein, have occurred in the Eastern District of Texas such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.  More specifically, upon information and belief:

a.      As to Defendant Disney Store, jurisdiction and venue have not been contested.  Defendant Disney Store operates "bricks and mortar" Disney Stores, typically located at mall shopping centers for the retail sale of Disney related merchandise;

b.      As to Defendant Disney Shopping, jurisdiction and venue have not been contested.   Defendant Disney Shopping sells Disney related merchandise via its interactive website at www.disneystore.com;

c.      As to Defendant DEI, jurisdiction and venue have been contested. Defendant DEI licenses third parties and other Disney companies the use of Disney properties, including, but not by way of limitation, routinely and systematically transacting substantial business within the State of Texas and in this District;

d.      As to Defendant DCP, jurisdiction and venue have been contested. Defendant DCP licenses third parties and other Disney companies the use of Disney properties, including, but not by way of limitation, routinely and systematically transacting substantial business within the State of Texas and in this District;

e.      As to Defendant BVHE, it routinely and systematically does business within the State of Texas, and within this District, by distributing, marketing, and selling Disney DVD's and Blu-Rays of Disney movies, including, but not by way of limitation, Disney's *Toy Story 3* movie; its widespread distribution and sales are to Texas retailers, such as Defendant Disney Stores and others, as well as sales on its interactive website, http://movies.disney.com/watch-at-home (see Exhibit 12).

f.      As to Defendant WDSMP, it routinely and systematically does business within the State of Texas, and within this District, by distributing Disney movies, including *Toy Story 3*, to local theaters for viewer entertainment.  Upon information and

belief, significant theater receipts have in the past and currently been generated by the sales of movie theater tickets by Defendant WDSMP at various local Texas theaters, who actually display and project the Disney movies.

       g.     As to Defendant BVTG, it routinely and systematically does business within the State of Texas, and within this District, by marketing and selling tickets for its shows and performing "Disney On Ice" touring ice skating shows in Texas, at venues such as Dallas, El Paso, Houston, and San Antonio, including but not by way of limitation, the "Disney On Ice: *Toy Story 3*" ice skating show.  Upon information and belief, the Disney on Ice: *Toy Story 3* shows used *Toy Story 3* characters in the ice show (such as "Lots-O'-Huggin'" bear) and, on information and belief, "Lots-O'-Huggin'" bear merchandise is sold at such events.  Tickets for such events are routinely marketed online by third party ticket providers such as "Ticket Master" and "Front Row Tickets" (see Exhibit 13).

       h.     As to Defendant DISI, it is routinely and systematically doing business within the State of Texas, and within this District, by distributing, marketing, and selling its gaming products through Texas retailers and online through its interactive website at http://games.disney.com/video-games.  Upon information and belief, Defendant DISI has sold *Toy Story 3* gaming products in Texas and in this District (see Exhibit 14, pages 1-5).

       i.     As to Defendant DLP, it is routinely and systematically doing business within the State of Texas, and within this District, by distributing, marketing, and selling Disney publications through Defendant Disney Stores, Defendant Disney Shopping, and third party retailers such as Barnes & Noble and via its interactive website at

http://books.disney.com/.  Upon information and belief, Defendant DLP has sold *Toy Story 3* publications in Texas and in this District (see Exhibit 15).

j.    As to Defendant WDR, it is routinely and systematically doing business within the State of Texas, and within this District, by distributing, marketing, and selling CD's through Defendant Disney Stores, Defendant Disney Shopping, third party Texas retailers, and online at its interactive website at http://music.disney.com/.  Upon information and belief, Defendant WDR has distributed, marketed, and sold *Toy Story 3* CD's in Texas and in this District (see Exhibit 14, pages 6-8).

k.    As to Defendant DD, it is routinely and systematically doing business within the State of Texas, and within this District, by distributing, marketing, and selling vacation/travel and cruise ship packages through Texas retailers and/or travel agents and online at its interactive websites http://disneyvacationclub.disney.go.com/destinations/ and http://disneyparks.disney.go.com/ (see Exhibit 17) and http://disneycruise.disney.go.com/ (see Exhibit 16). Some of Defendant DD cruise ships depart from Galveston, Texas.  Upon information and belief, Defendant WDR has distributed, marketed, and sold these vacation/travel/cruise packages in Texas and in this District.  Further, Defendant DD sells *Toy Story 3* merchandise on such cruise ships, and further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'" bear character, in costume on such cruise ships.

l.    As to Defendant WDPR, it is routinely and systematically doing business within the State of Texas, and within this District, by advertising, marketing, and promoting its various resorts, including Disneyland Resort, Walt Disney World Resort, Tokyo Disney Resort, Disneyland Paris, Hong Kong Disneyland Resort, and Shanghai

Disney Resort and related theme parks, by its various interactive websites at

 http://disneyparks.disney.go.com (see Exhibit 17) and

 http://disneyworld.disney.go.com/resorts (see Exhibit 18).  Upon information and belief,

Defendant WDPR sells *Toy Story 3* merchandise at such resorts and theme parks and

further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'" bear character, in

costume at such venues.

m.    As to Defendant MCC, it is routinely and systematically doing business

within the State of Texas, and within this District, by distributing, marketing, and selling

vacation/travel and cruise ship packages through Texas retailers and/or travel agents and

online at its interactive websites at http://disneyvacationclub.disney.go.com/destinations/

and http://disneyparks.disney.go.com/ (see Exhibit 17) and

http://disneycruise.disney.go.com/ (see Exhibit 16).    Upon information and belief,

Defendant MCC has distributed, marketed, and sold these vacation/travel/cruise packages

in Texas and in this District.  Further, Defendant DD sells *Toy Story 3* merchandise on

such cruise ships, and further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'"

bear character, in costume on such cruise ships.

n.    As to Defendant MKI, it is routinely and systematically doing business

within the State of Texas, and within this District, by advertising, marketing, promoting,

and booking reservations for the Magic Kingdom Park via its interactive websites at

http://disneyworld.disney.go.com/destinations/magic-kingdom and

 www.magicalgetaway.com/disney and its 800-881-2972 toll free reservation number

(see Exhibit 19).  Upon information and belief, Defendant MKI sells *Toy Story 3*

merchandise at the Magic Kingdom Park and further has *Toy Story 3* characters, such as

the "Lots-O'-Huggin'" bear character, in costume at such venues.

## PLAINTIFF'S RIGHTS

19.     Plaintiff DLI is the creator of certain "hugging technology" and the owner of the mark "Lots of Hugs" as associated with stuffed toy bears.

20.     United States Patent No. 7,410,403 (the "Patent"), entitled "Hugging Toy" was duly and legally issued by the United States Patent and Trademark Office on August 12, 2008, after full and fair examination; this Patent depicts Plaintiff DLI's "hugging technology."

21.     Plaintiff DLI is the assignee of all rights, title and interest in and to the Patent. A true and correct copy of the U.S. Patent No. 7,410,403 is attached as Exhibit "1." This patent is directed to a huggable bear children's toy.

22.     U.S. Trademark Serial No. 77158139 for the word mark "Lots of Hugs" was duly and legally issued to by the United States Patent and Trademark Office on January 1, 2008, as U.S. Trademark Registration No. 3,361,849 (the "'849 Registration"), after full and fair examination. A true and correct copy of the '849 Registration is attached hereto as Exhibit "2."

23.     Plaintiff DLI is the owner of all rights, title and interest in and to the mark "Lots of Hugs" and the '849 Registration and all appertaining good will and possesses all rights of recovery under the '849 Registration, including the right to recover damages and royalties for past infringement.

24.     In 1994, Plaintiff DLI created a soft pillowy stuffed animal initially referred to as "Snugglers." In February 1995, DLI licensed the "Snugglers" product to Happiness Express, Inc. In 1995, various trademarks were filed by Happiness Express, Inc., including an Intent to Use application for "Lots of Hugs" (as filed on October 26, 1995, which resulted in U.S. Trademark Registration No. 2,120,326 [the "'326 Registration"] as issued on December 9, 1997,

as shown in the attached Exhibit "3").  In December 1995, Happiness Express, Inc. began the marketing and sale of "Lots of Hugs" stuffed toy bears.  By February 1996, Happiness Express, Inc. introduced its "Lots of Hugs" stuffed toy bear product at various Toy Fairs.  Happiness Express, Inc. began to broadcast television commercials marketing the "Lots of Hugs" stuffed toy bear product in 1996 (Exhibit "4") and sales commenced in mass markets, as well as specialty markets.

25.    In 1996, Happiness Express, Inc. filed for bankruptcy court protection.  In September 1996, Plaintiff DLI terminated the Happiness Express, Inc. license for the product.  On November 4, 1996, the Bankruptcy Court assigned all Happiness Express, Inc. intellectual property rights to Plaintiff DLI, including the '326 Registration.  The '326 Registration was cancelled by the U.S. Patent and Trademark Office on September 11, 2004, because Plaintiff DLI did not file an acceptable Section 8 [15 U.S.C. § 1058(a)(1)] Declaration.

26.    Between 1997 and 2007, Plaintiff DLI developed, produced and sold "Lots of Hugs" stuffed toy bear products.  Further, Plaintiff DLI licensed its "hugging technology" to Applause—affiliated with Henson/Disney—for its sale of Jim Henson's "Bear in the Big Blue House" huggable stuffed bear product.  *See* Exhibit "5."

27.    As noted above, on April 17, 2007, Plaintiff DLI filed an application for U.S. Trademark registration of its "Lots of Hugs" mark (which became the '849 Registration on January 1, 2008) in preparation for additional licensing and use.

28.    In August 2007, Plaintiff DLI's affiliate licensed its "Lots of Hugs" mark to Concord Industries for marketing, selling and distribution of teddy bear products during the U.S. Olympics.

29.     In August 2007, due to its relationship with Concord Industries, as authorized by Plaintiff DLI, QVC initially launched its nationally televised "Lots of Hugs" Olympic Panda Bears sales, marketing and promotional activities (see Exhibit "6").

30.     In August 2008, QVC again launched a nationally televised sales campaign for "Lots of Hugs" Olympic Panda Bears for the Beijing Olympics.  The entire supply of in excess of 1000 available "Lots of Hugs" bears was quickly sold.

31.     Between 1996 to date, Plaintiff DLI and its licensees have continuously marketed and sold "Lots of Hugs" stuffed toy bears.  Since 2008, Plaintiff DLI has further nationally marketed and promoted its "Lots of Hugs" stuffed bears through its website at www.lotsofhugs.org.

## DEFENDANTS' ACTIONS

32.     Defendant DEI is a subsidary of Disney (see Exhibit 7, p. 2, ¶ 5.a.).

33.     Upon information and belief, in about 2006, Disney, through Defendant DEI, acquired Pixar Animation Studios as one of its subsidiaries.

34.     "Disney, together with its subsidiaries, is a diversified worldwide entertainment company with operations in five business segments: Media Networks, Parks and Resorts, Studio Entertainment, Consumer Products and Interactive Media.  Media Networks comprises international and domestic cable networks and its broadcasting business; Parks and Resorts comprises resorts and theme parks around the world, the Disney Cruise Line and licensed theme parks such as Tokyo Disney Resort in Japan; Studio Entertainment comprises live-action and animated theatrical and video motion pictures, musical recordings and live stage plays; Consumer Products comprises relationships with licensees, manufacturers, publishers and retailers throughout the world to design, develop, publish, promote and sell a wide variety of

products based on DEI's intellectual property as well as its own publishing and retail businesses; Interactive Media Group creates and delivers branded entertainment games and lifestyle content across interactive media platforms." (See Exhibit 7, pp. 2-3, quoting ¶ 5.b.).

35.    "A significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with DEI's motion picture and television programs.    The distinctive elements licensed and/or merchandised include, but are not limited to, the world-famous characters featured in numerous animated short films, video games, feature length motion pictures and television programs produced over a period of more than seventy years, including, but not limited to, Mickey Mouse, Minnie Mouse, Pluto, Goofy, Winnie the Pooh, Tigger, various characters form the motion picture *Toy Story* and Handy Manny (from the television series *Handy Manny*) (hereinafter referred to as the "DEI Characters")" (Exhibit 7, p. 3, quoting ¶ 5.c.).

36.    Defendants have aggressively enforced their various intellectual property rights associated with its various DEI Characters, including associated copyrights and trademarks.    For example, see Exhibit "7," a Complaint which was filed by Defendant DEI in the Central District of California, Civil Action No. 2:12-cv-07347 ("the CA Lawsuit") wherein Defendant DEI asserted well in excess of 200 copyright registrations (see Exhibit "7" and attached Exhibit "A") and in excess of 70 U.S. Trademark Registrations (see Exhibit "7" and attached Exhibit "B"—all related to DEI Characters).    Recent similar enforcement cases include those also filed by Defendant DEI in the Central District of California being Civil Action No. 2:12-cv-09507 and No. 2:12-cv-10462, asserting like copyright and trademark registrations.

37.    Upon information and belief, Defendant DEI, Defendant DCP, and certain others of Defendants aggressively pursue the protection of DEI Characters by and through related

copyrights and trademarks.

38.     Upon information and belief, Defendants directly or by and through their related subsidiaries and sister entities, such as Defendant DEI, own all rights and interests in the Pixar created, developed, and produced movie *Toy Story 3* and its characters. *Toy Story 3* is a 2010 American 3D computer-animated comedy-adventure film. *Toy Story 3* is the third installment in the *Toy Story* series. *Toy Story 3* was released and distributed by Defendants. *Toy Story 3* was directed by Lee Unkrich. The film was released worldwide from June through October 2010 in Disney Digital 3-D, RealD, and IMAX 3D (Exhibit "8"). At this time, Defendants have started promoting their *Toy Story 4* animated movie; however, it is unclear whether or not "Lots'-O'-Huggin'" or "Lotso" bear is a character associated with *Toy Story 4*. If so, Plaintiff DLI reserves its right to amend so as to allege infringement by such use by Defendants in *Toy Story 4*.

39.     The *Toy Story 3* plot focused on the toys Woody, Buzz Lightyear, and their friends, dealing with an uncertain future as their owner, Andy, prepares to leave for college. At one point in the story the toys are discarded and "escape" to the Sunnyside Day Care Center. The characters, Andy's toys, are welcomed by the many toys at Sunnyside and given a tour of the Day Care Center by various characters including one named "Lots-O'-Huggin'" bear a/k/a "Lotso" bear, who first introduces himself with the phrase: "Welcome to Sunnyside folks! I'm Lots-O'-Huggin' Bear, but please, call me 'Lotso'".

40.     The plot continues with the toys enjoying their new home, leaving the character Woody alone in an attempt to return to Andy. The character Woody's escape attempt fails and he is found outside by a little girl, Bonnie, who takes him home and plays with him along with her other toys, who are well-treated, happy, and who readily welcome Woody. Woody is relieved until he hears about "Lots-O'-Huggin'" bear a/k/a "Lotso" bear's previous history from

Chuckles, the sad clown.

41.    The character "Lotso" bear, along with Chuckles and Big Baby, were once accidentally lost by their original owner, Daisy.  The three found their way back to Daisy's home, but "Lotso" saw that he had been replaced with another bear.

42.    Though Chuckles realized the truth, "Lots-O'-Huggin'" bear a/k/a "Lotso" bear convinced Big Baby that they had all been replaced.  The three of them made their way to Sunnyside, which "Lotso" bear took over as his personal fiefdom, running it like a prison and a military base at night.  Worried for his friends, Woody hurries back to the daycare to find that they have been confined to the room with the youngest toddlers.

43.    After Andy's toys' first day spent at Sunnyside, Buzz discovers that the daycare is like a prison during the night, and is captured by "Lotso's" gang, who gains his allegiance by having him reverted to demonstration mode, restoring his original "Space Ranger" persona from the first movie.

44.    The other toys discover that Woody was right about Andy, but "Lots-O'-Huggin'" bear a/k/a "Lotso," with Buzz's help, prevents them from leaving the daycare.

45.    "Lots-O'-Huggin'" bear a/k/a "Lotso" bear is a new character to the *Toy Story* movies and is integral to the plot line of *Toy Story 3,* as its principal antagonist.

46.    *Toy Story 3* was an extremely successful motion picture of Defendants.  *Toy Story 3* broke records with the biggest opening day North American gross theater receipts for an animated picture.  *Toy Story 3* had the highest-grossing opening weekend for any Pixar film. The film was the highest-grossing film of 2010 in the United States and Canada, and the highest-grossing film of 2010 worldwide.  *Toy Story 3* became the first ever animated film in history to make over $1 billion in worldwide ticket sales.  *Toy Story 3* merchandise has generated in excess

of $10 billion at retail. *Toy Story 3* was one of the highest-grossing films of all time. *Toy Story 3* was nominated for five Academy Awards, including Best Picture, Best Adapted Screenplay, and Best Sound Editing. *Toy Story 3* won the Academy Awards for Best Animated Feature and Best Original Song (Exhibit "8").

47.    Defendant DEI claimed copyright and trademark protection for certain of its *Toy Story* and *Toy Story 2* movie characters, but not for the *Toy Story 3* principal antagonist "Lots-O'-Huggin'" a/k/a "Lotso" bear character (see Exhibit "7" and attached Exhibits "A" and "B"). On the other hand, Defendant DEI's co-Plaintiff in the CA Lawsuit, DC Comics, had trademarks on its various protagonist characters such as BATMAN, ROBIN, BATWOMAN, SUPERMAN, WONDER WOMAN, as well as its various antagonists such as JOKER, LEX LUTHOR, MR. FREEZE (see Exhibit "7" and attached Exhibit "D"). Exemplar "antagonist" trademark registrations are shown in Exhibit "9."

48.    Upon information and belief, Defendants advertised, promoted, marketed, used, broadcasted, and displayed the *Toy Story 3* movie, including selling theater tickets, DVD's, Blu-Rays, CD's, and licensed related merchandise for distribution and sale in the Eastern District of Texas, throughout the State of Texas, throughout the United States, as well as other locations throughout the world, all of which included the "Lots-O'-Huggin'" a/k/a "Lotso" bear character, through its five business segments detailed in paragraph 34 hereinabove. For example, and not by way of limitation, Defendants sold theater tickets, DVD's, Blu-Rays, and CD's of *Toy Story 3*; sold "Lots-O'-Huggin'" a/k/a "Lotso" bears and other related merchandise; and it is believed that Defendants licensed others to make and sell "Lots-O'-Huggin'" a/k/a "Lotso" products for resale at large retailers (i.e. Walmart and Toys-R-Us) as well as at other Disney venues. Upon information and belief, the "Lots-O'-Huggin'" aka "Lotso" bear products were sold at and its

character used at Defendants' theme parks, on Defendants' cruise ships, in association with Defendants' *Disney on Ice: Toy Story 3*, in Defendants' video games, at Defendants' resorts, and in its games.  This includes activities in venues outside the United States from which Defendants gained revenues within the United States.  Merely because the consummation of the unlawful activity occurred on foreign soil is of no assistance to Defendants.

49.    Upon information and belief, so popular was the *Toy Story 3* movie that it spawned a book "*The Art of Toy Story 3*," published by Defendant DLP, which in part highlights "Lots-O'-Huggin'" a/k/a "Lotso" bear as shown in selected pages from this book, attached as Exhibit "10."  Further, Defendant DLP has published other *Toy Story 3* publications, such as its "*Toy Story 3* Action Figures Coloring Book" and its "*Toy Story 3* Meet the Gang" book and publications that include "Lots-O'-Huggin'" bear, such as a "*Toy Story* Storybook Collection."

### INTERACTIVE GROUP'S FEAR OF DISNEY

50.    In about July 2011, Plaintiff DLI's affiliate entered into a License Agreement with Interactive Group ("IG") for IG to market and sell Plaintiff DLI's bear product.  IG was fearful to use the "Lots of Hugs" mark for the Plaintiff DLI licensed bear products in view of the worldwide success of the *Toy Story 3* movie—fearing Disney and consumer confusion with Defendants' "Lots-O'-Huggin'" bear a/k/a "Lotso" bear character if IG should market and sell "Lots of Hugs" bears.  Subsequently, IG required that the licensed bears be marked "hugalots" instead of "Lots of Hugs."

51.    Plaintiff DLI's principal filed an application for U.S. Trademark for "hugalots," which resulted in U.S. Trademark Registration No. 4,262,625 (the "'625 Registration") a copy of which is attached as Exhibit "11."

52.     IG, and its licensee, marketed and sold licensed "hugalots" bears, during July 2011 through December 2013.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:  FEDERAL UNFAIR COMPETITION

53.     Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

54.     Upon information and belief, as of at least as early as October 20, 2007, Defendants had constructive knowledge, as well as actual knowledge, of Plaintiff DLI's "Lots of Hugs" mark, its '849 and '326 Registrations, and its website and actively sought to illegally appropriate for their own the "Lots of Hugs" mark and associated good will of Plaintiff DLI as a principal character for their *Toy Story 3* movie.

55.     Upon information and belief, Defendants' decision to adopt and use the "Lots-O'-Huggin'" a/k/a "Lotso" bear character misappropriates Plaintiff's "Lots of Hugs" identifier as Defendants' principal antagonist character of the *Toy Story 3* movie.  Defendants and Pixar, decided that this "Lots-O'-Huggin'" a/k/a "Lotso" character should be the star antagonist of its *Toy Story 3* movie, all without the license or authority of Plaintiff DLI.  Such actions by Defendants, without authority of Plaintiff DLI, constitutes the acts of colorably imitating Plaintiff DLI's registered '849 Registration and its "Lots of Hugs"  mark and applying such colorable imitation to labels, signs, prints, packages, products, wrappers, movies,  characters or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, products and/or services, which such use is likely to cause confusion, or to cause mistake, or to deceive.

56.     Upon information and belief, Defendants' adoption and use of its "Lots-O'-Huggin'" a/k/a "Lotso" bear character in its *Toy Story 3* movie is a use in commerce of a word,

term, name, symbol or device, or any combination thereof, or a false designation of origin, a false or misleading designation of fact, or a false or misleading representation of fact, which—

      (A)     is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff DLI, or as to the sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff DLI; or

      (B)     in commercial advertising or promotion, misrepresents the nature, characteristics or qualities of Defendants' or Plaintiff DLI's goods, services or commercial activities.

57.    Because of the success of the *Toy Story 3* movie worldwide, Plaintiff DLI is viewed as a junior user of the mark, when in fact it is the senior user of the mark "Lots of Hugs." Plaintiff DLI's valuable property rights in and to its "Lots of Hugs" mark and '849 Registration have been destroyed by the overwhelming worldwide success of Disney's *Toy Story 3* movie, and the related notoriety of the "Lots-O'-Huggin'" a/k/a "Lotso" character of Defendants.

58.    Potential customers will likely improperly associate or confuse Defendants' "Lots-O'-Huggin'" and "Lotso" character with Plaintiff DLI's stuffed toys, including its bears, as identified with Plaintiff DLI's "Lots of Hugs" mark.  In fact, Plaintiff DLI has been required to develop a new mark due to the likelihood of confusion with and the concern that Plaintiff DLI's "Lots of Hugs" toys will be improperly associated or confused with the Defendants' "Lots-O'-Huggin'" and "Lotso" character.

59.    Plaintiff DLI has been damaged as a result of Defendants' wrongful conduct. Thus, Defendants are liable to Plaintiff DLI in an amount that adequately compensates Plaintiff DLI for Defendants' acts of unfair competition.  Plaintiff DLI is entitled to recover that portion

of Defendants' profits that resulted from Defendants' wrongful acts.  Further, Plaintiff DLI is entitled to its damages resulting from such acts; specifically, a reasonable royalty or lost royalties.  These wrongful acts include:

A.    the unlicensed use of "Lots-O'-Huggin'" bear character (1) in the *Toy Story 3* movie by Defendant WDSMP (2) in *Toy Story 3* DVD's and Blu-Ray's by Defendant BVHE (3) in *Toy Story 3* CD's by Defendant WDR (4) at Defendants' theme parks and resorts by Defendant WDPR and Defendant MKI (5) on Defendants' cruise ships by Defendant DD and Defendant MCC (6) in Defendants' *Disney on Ice: Toy Story 3* by Defendant BVTG (7) in *Toy Story 3* and related *Toy Story* publications by Defendant DLP and (8) in *Toy Story 3* gaming products by Defendant DISI, whether such activities or use occurred inside the United States or on foreign soil, and

B.    the unlicensed sale of "Lots-O'-Huggin'" or "Lotso" bears and like identified merchandise (1) by Disney Stores and Defendant Disney Shopping (2) by licensing third party retailers (i.e. Walmart, Toys-R-Us) and other Defendants by Defendant DEI and Defendant DCP (3) at Defendants' theme parks and resorts by Defendant WDPR and Defendant MKI, (4) on Defendants' cruise ships by Defendant DD and Defendant MCC, (5) in association with its *Disney on Ice: Toy Story 3* by Defendant BVTG, (6) in *Toy Story 3* and related *Toy Story* publications by Defendant DLP, (7) in *Toy Story 3* gaming products by Defendant DISI, whether such activities or use occurred inside the United States or on foreign soil, for all of which Defendants' received licensing revenues, royalties and/or profits.

60.    The acts of the Defendants complained of herein constitute unfair competition in violation of 15 U.S.C. § 1125(a).

61.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff DLI seeks Defendants' profits from Defendants' sale of "Lots-O'-Huggin'" or "Lotso" merchandise such as toy stuffed bears and like identified merchandise, use of the "Lots-O'-Huggin'" or "Lotso" character (in their movies, including theater receipts, DVD's, Blu-Rays, CD's; *Disney On Ice: Toy Story 3*, cruise line; theme parks and resorts; books; gaming products, as detailed specifically in paragraph 59, *supra*), whether such activities or use occurred inside the United States or on foreign soil. Plaintiff DLI also seeks the damages sustained by Plaintiff DLI (in the form of a reasonable royalty or lost royalties), and costs of this action. As to the damages assessment, Plaintiff DLI seeks up to three times that amount, in light of the circumstances of this case. Also, in the event that the recovery based on Defendants' profits is inadequate, Plaintiff DLI seeks such amount as the Court finds to be just in its discretion, in light of the circumstances of the case.

62.    In the event the Court should find that Defendants knew of Plaintiff DLI's mark, but nonetheless deliberately chose to use the mark without consulting with or obtaining any permission or license from Plaintiff DLI, then Plaintiff DLI submits this is an exceptional case and seeks an award of its attorneys' fees to Plaintiff DLI as the prevailing party.

### SECOND CAUSE OF ACTION: TRADEMARK INFRINGEMENT

63.    Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

64.    Defendants are, without the consent of Plaintiff DLI, using in commerce a colorable imitation of Plaintiff DLI's registered "Lots of Hugs" trademark, registered under the '326 Registration and again under the '849 Registration, in conjunction with the sale, offering for sale, distribution, or advertising of the *Toy Story 3* movie. In particular, but without limitation, Defendants are using the mark "Lots-O'-Huggin" as the name of a principal character, a bear, in *Toy Story 3*. This use of "Lots-O'-Huggin" by Defendants is likely to cause confusion—and in

particular, but without limitation, reverse confusion—or to cause mistake, or to deceive. Therefore, Defendants are infringing Plaintiff DLI's trademark under 15 U.S.C. § 1114(1)(a).

65.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff DLI seeks Defendants' profits from Defendants' sale of "Lots-O'-Huggin'" or "Lotso" merchandise such as toy stuffed bears, from Defendants' use of the "Lots-O'-Huggin'" or "Lotso" character (in their *Toy Story 3* movie, including theater receipts, DVD's, Blu-Rays, CD's; *Disney On Ice: Toy Story 3*, cruise line; theme parks and resorts; books; gaming products, as detailed specifically in paragraph 59, *supra*), whether such activities or use occurred inside the United States or on foreign soil. Plaintiff DLI also seeks the damages sustained by Plaintiff DLI (in the form of a reasonable royalty or lost royalties), and costs of this action.  As to the damages assessment, Plaintiff DLI seeks up to three times that amount, in light of the circumstances of this case.  Also, in the event that the recovery based on Defendants' profits is inadequate, Plaintiff DLI seeks such amount as the Court finds to be just in its discretion, in light of the circumstances of the case.

66.     In the event the Court should find that Defendants knew of Plaintiff DLI's mark, but nonetheless deliberately chose to use the mark without consulting with or obtaining any permission or license from Plaintiff DLI, then Plaintiff DLI submits this is an exceptional case and seeks an award of its attorneys' fees to Plaintiff DLI as the prevailing party.

### THIRD CAUSE OF ACTION: COMMON-LAW UNFAIR COMPETITION

67.     Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

68.     To whatever extent Plaintiff DLI's "Lots of Hugs" mark may not be protected under federal law, under the foregoing allegations the mark is protected under Texas common law, and Defendants have infringed Plaintiff DLI's mark or committed acts of unfair competition against Plaintiff DLI under Texas common law.

69.    Further, on information and belief, the actions of Defendants were actuated by fraud or malice or were grossly negligent, entitling Plaintiff DLI to exemplary damages under Chapter 41, Texas Civil Practice & Remedies Code.

## JURY DEMAND

70.    Pursuant to Rule 38(b), FRCP, Plaintiff DLI demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff DLI prays that judgment be entered against Defendants finding and awarding Plaintiff DLI the following:

1.    A declaration that the Defendants' adoption and use of the "Lots-O'-Huggin'" a/k/a "Lotso" character in the *Toy Story 3* movie has misappropriated Plaintiff DLI's "Lots of Hugs" mark and otherwise unfairly competed with Plaintiff DLI;

2.    A declaration that Defendants have infringed on Plaintiff DLI's "Lots of Hugs" registered trademark under 15 U.S.C. § 1114(a);

3.    All damages of Plaintiff DLI, including reasonable royalties for all of Plaintiff's lost licensing revenues and royalties from Defendants, and lost royalties Plaintiff DLI could have obtained from third parties absent the misappropriation and unfair competition of Defendants, including without limitation due to reverse confusion, whether inside the United States, or, on foreign soil to the extent of revenues which Defendants obtained in the United States from such foreign activities, or to the extent that Plaintiff DLI could have licensed its mark overseas;

4.    Defendants' profits attributable to such misappropriation or unjust enrichment, whether inside the United States, or, on foreign soil to the extent of revenues which Defendants obtained in the United States from such foreign activities, including without limitation,

    A.    from Defendants' sale of "Lots-O'-Huggin'" or "Lotso" toy stuffed bears and like identified merchandise:

        (a)    by Defendant Disney Stores in its retail stores;
        (b)    by Defendant Disney Shopping via its online sales;
        (c)    by Defendant DEI's and Defendant DCP's unauthorized licensing of same;
        (d)    by Defendant WDPR and Defendant MKI at its theme parks and resorts;
        (e)    by Defendant DD and Defendant MCC on its cruise ships;

(f)    by Defendant BVTG in association with *Disney on Ice: Toy Story 3*;

(g)    by Defendant DLP's *Toy Story 3* and related *Toy Story* publications;

(h)    by Defendant DISI's *Toy Story 3* gaming products; and,

B.    from Defendants' use of the "Lots-O'-Huggin'" or "Lotso" character:

(a)    in the *Toy Story 3* movie, based upon the theater receipts received therefrom by Defendant WDSMP;

(b)    in the *Toy Story 3* DVD's and Blu-Ray's, based upon sales thereof by Defendant BVHE;

(c)    in *Toy Story 3* CD's, based upon sales thereof by Defendant WDR;

(d)    at Defendants' theme parks and resorts based upon the receipts attributable to use of that character by Defendant WDPR and Defendant MKI;

(e)    on Defendants' cruise ships, based upon receipts attributable to use of that character by Defendant DD and Defendant MCC;

(f)    in *Disney on Ice: Toy Story 3,* based upon receipts of Defendant BVTG attributable to use of that character;

(g)    in *Toy Story 3* and related *Toy Story* publications, based upon sales by Defendant DLP attributable to use of that character; and

(h)    in *Toy Story 3* gaming products, based upon sales by Defendant DISI attributable to use of that character,

as a result of the infringement and wrongful conduct of Defendants, per 15 U.S.C. § 1114(1)(a), 15 U.S.C. § 1117(a), and 15 U.S.C. § 1125(a);

5.    In accordance with the circumstances of this case, three times Plaintiff DLI's damages, per 15 U.S.C. § 1117(a);

6.    In accordance with the circumstances of the case, such sum as the Court may find to be just with respect to Defendants' profits, per 15 U.S.C. § 1117(a);

7.    A finding that this case is exceptional, and awarding Plaintiff DLI its reasonable attorney's fees, per 15 U.S.C. § 1117(a);

8.    A continuing royalty for all future uses of "Lots-O'-Huggin'" and "Lotso" by Defendants;

9.    Exemplary damages for common-law unfair competition;

10.    All costs of this action; and

11.    All such other further relief at law or in equity to which Plaintiff may be entitled.

Respectfully submitted,

*/s/Richard L. Schwartz*
Richard L. Schwartz
Texas Bar No. 17869500
rschwartz@whitakerchalk.com

Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
  & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

Elizabeth L. DeRieux
Email: ederieux@capshawlaw.com

D. Jeffrey Rambin
Email: jrambin@capshawlaw.com

Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Tel: (903) 236-9800
Fax: (903) 236-8787

**ATTORNEYS FOR PLAINTIFF
DIECE-LISA INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed by CM/ECF on this 25th day of November, 2014, and thereby is being served on all counsel who have consented to service thereby.

*/s/Richard L. Schwartz*
Richard L. Schwartz