IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIECE-LISA INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 2:12-cv-00400-RWS-RSP |
| v. | § | (lead case) |
| | § | No. 2:14-cv-00070-RWS-RSP |
| DISNEY STORE USA, LLC ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

In this trademark case, the Court now considers Plaintiff's Objections to Memorandum and Order Denying Leave to Amend (Docket No. 210). For the reasons set forth below, the Court will **OVERRULE** Plaintiff's Objections and **ADOPT** the Magistrate Judge's Memorandum Order (Docket No. 206), which vacated his earlier grant of Plaintiff's Motion for Leave to File Third Am. Compl. (Docket No. 135).

**I. BACKGROUND**

Deice-Lisa Industries, Inc. ("DLI") is the owner of United States Registration 3,361,849 for the trademark LOTS OF HUGS. Second Am. Compl. (Docket No. 46) at ¶ 9. Since 1997, DLI has sold stuffed toy bear products branded with the LOTS OF HUGS mark. *Id.* at ¶ 13.

In 2010, Disney released *Toy Story 3*, an animated film featuring Disney heroes Sherriff Woody and Buzz Lightyear. *Id.* at ¶¶ 20–21. In the film, Woody and Buzz battle Lots-O'-Huggin' Bear (Lotso for short), a hot pink teddy bear with a big nose and a southern accent. The film received five Academy Award nominations, won two Academy Awards, grossed over $1 billion worldwide, became the highest-grossing film of 2010 and the third highest-grossing animated film

of all time, and was the first animated film to generate $1 billion in ticket sales. *Id.* at ¶ 28. One source estimated *Toy Story 3* merchandise would generate more than $7.3 billion in retail sales. *Id.*

This dispute relates to that merchandising revenue and, more specifically, Disney's marketing and sales of Lots-O'-Huggin' merchandise. DLI alleges Disney's sales of Lots-O'-Huggin' merchandise infringes its LOTS OF HUGS trademark. *Id.* at ¶ 38. DLI further alleges its property rights in the LOTS OF HUGS mark have been destroyed by the overwhelming success of *Toy Story 3* and related infringing sales of Lots-O'-Huggin' merchandise. *Id.* at ¶ 39.

## II. PROCEDURAL HISTORY

The relevant procedural history concerns DLI's Second and Third Amended Complaints. DLI lodged its Second Amended Complaint in January 2014, in which it alleged Defendants Disney Store and Disney Shopping infringed DLI's trademark rights by using LOTS-O'-HUGGIN' and LOTSO on labels, signs, prints, packages, products wrappers, receptacles, and advertisements. Second Am. Compl. (Docket No. 46) at ¶ 38.

In November 2014, DLI asked for leave to file its Third Amended Complaint. Docket No. 135. Relative to the Second Amended Complaint, DLI sought to join ten additional Disney-related parties. Docket No. 136 at ¶¶ 6–15. The Third Amended Complaint also expanded the allegedly infringing activities to use of the Lotso character at parks and resorts, on cruise ships, during touring ice shows, and in books and gaming products. *Id*. at 6–10 (¶¶ e.–n.). Disney opposed leave, arguing that DLI's Third Amended Complaint would create jurisdictional and venue-related problems and significantly alter the nature and scope of the case. Docket No. 143. In particular, Disney noted all ten prospective defendants have Southern California offices, the overwhelming preponderance of evidence is in California, there is no evidence in Texas, and there are no fact

witnesses in Texas. *Id.* at 13. Disney also asserted there was no admissible evidence of any kind to establish jurisdiction in Texas. *Id.*

Judge Payne granted leave to amend, concluding that there would be substantial efficiencies in addressing DLI's claims against all defendants together. Docket No. 149 at 3.

Shortly after the Third Amended Complaint became operative, the ten newly joined defendants moved to dismiss under Fed. R. Civ. P. 12(b) (Docket No. 164) and to transfer the case to the Central District of California (Docket No. 165). In opposing the motions, DLI did not address the new defendants' evidence and instead advanced a "unified entity" theory of personal jurisdiction—that all defendants are "one big company" for purposes of personal jurisdiction. Docket No. 168 at 5. The Disney defendants rejected this "unified entity" theory, arguing it required the untenable result that "wherever *any* Disney company is subject to personal jurisdiction, *every* Disney company is subject to personal jurisdiction." Docket No. 172 at 5 (emphasis in original).

While considering the motions to dismiss and transfer, Judge Payne concluded the Third Amended Complaint "changed the nature of this case" and reconsidered his prior order granting leave:

> Recent proceedings have made clear that the added claims bear less connection to the original claims than the Court originally perceived. Even Plaintiff's recent papers have made this evident to the Court. (*See* Dkt. No. 192 at 3 ("Although no case law was found directly on point"); Dkt. No. 192 at 4 ("Because of the somewhat *sui generis* circumstances of this case, no case law on point was discovered.").
>
> The Defendants have raised serious issues of personal jurisdiction and venue that the Court finds are not adequately addressed by the "unified entity" theory advanced by Plaintiff. Even though the factual issues are examined through a *prima facie* prism, the Court has serious doubts about the factual underpinnings for that theory, and also finds inadequate support in the jurisprudence.

Docket No. 206 at 2–3. Judge Payne then concluded that he "improvidently granted" DLI's motion for leave and vacated the order, thus reviving the Second Amended Complaint. *Id.* at 3. DLI then filed the objections now before the Court.

## III. STANDARD OF REVIEW

DLI contends the Court should review Judge Payne's order *de novo* because the order had the dispositive effect of dismissing multiple defendants from the case. Docket No. 210 at 1. This contention is based, at least in part, on the notion that dismissing the most-recently joined defendants might result in DLI's claims being barred by a statute of limitations. Docket No. 220 at 1–2. Disney, however, contends a clear-error standard governs because the denial of leave to amend is not a determination on the merits. Docket No. 213 at 1.

The Court agrees with DLI because of the potential statute-of-limitations issue. Because this litigation has been stayed for almost 18 months, and because DLI's Third Amended Complaint became operative nearly 30 months ago, the statutes of limitations applicable to DLI's claims may significantly and negatively impact its rights. Thus, the Court will use the more stringent *de novo* standard of review.

## IV. DISCUSSION

As long as a court has jurisdiction over a case, it has inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). An order granting leave to amend is interlocutory. *See Bush v. Keith*, 129 Fed. App'x 108, 109 (5th Cir. 2005). Thus, Judge Payne had the inherent procedural power to reconsider, rescind, or modify his order granting leave to amend for cause seen by him to be sufficient.

Here, Judge Payne found the Third Amended Complaint expanded the list of allegedly

infringing activities to use of characters at parks and resorts, on cruise ships, during touring ice shows, and in books and gaming products. Docket No. 206 at 2. Judge Payne found that this expansion "changed the nature of the case" and was sufficient cause to vacate the prior order. *Id.*

DLI first objects that Fed. R. Civ. P. 15 does not give the district court discretion to permit denial of leave to amend a complaint on these facts. Docket No. 210 at 1–2 (citing *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)). The Court, however, has discretion to deny leave to amend when "[a]mendment of the pleadings would add new and complex issues to a case." *Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 229 (5th Cir. 1983); *see also Mayeaux*, 376 F.3d at 427–28 (concluding the district court did not abuse its discretion in denying leave to amend when the proposed amendments "essentially pleaded a fundamentally different case with new causes of action and different parties," involved "new theories of recovery[,] and impose[d] additional discovery requirements"); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (holding the proposed amendment would have radically altered the nature of a trial on the merits because it would have established an entirely new factual basis for plaintiffs' claims). Such a situation is clearly present here, as DLI's Third Amended Complaint greatly expanded the list of allegedly infringing activities to include not just Disney's use of the LOTS-O'-HUGGIN' mark, but also use of the Lotso character at a number of different venues. These new allegations are based on an entirely new set of facts, which justifies a denial of leave to amend.

Second, DLI argues that Judge Payne wrongly concluded vacating the order would simplify the case. Docket No. 210 at 2–5. The case, DLI argues, had already expanded to include infringement theories relating to things other than just toy bears before the Third Amended Complaint was filed and will continue to be a part of the case even if Judge Payne's order is not reversed. *Id.* at 4. The Court finds that regardless of whether or not these infringement theories

remain in the case, the case would undoubtedly have expanded and been complicated *even more* if Judge Payne had not vacated his earlier order and if the additional defendants remained in this case. As Judge Payne noted in his Memorandum Order, the addition of the ten defendants in the Third Amended Complaint introduced serious issues relating to personal jurisdiction and venue. Docket No. 206 at 2–3.

Finally, DLI argues the vacating order is prejudicial in light of the extensive discovery and completed expert reports related to the most recently added defendants. Docket No. 210 at 5–6. DLI argues it now must effectively start over, resulting in extreme prejudice by virtue of extensive duplication of work. *Id.* The Court, however, agrees with Disney in that whatever discovery has been taken need not be undone, and DLI is free to use that discovery in a separate action. Thus, the Court concludes that any such prejudice resulting from existing discovery is both minimal and outweighed by the considerations favoring denial of leave to amend.

## V. CONCLUSION

The Court agrees with Judge Payne's conclusion that he "improvidently granted" Plaintiff's Motion for Leave to File Third Am. Compl. (Docket No. 135). The Court further finds that Judge Payne properly vacated the order granting leave. Accordingly, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** Judge Payne's Memorandum Order (Docket No. 206).

**SIGNED this 10th day of July, 2017.**

*[Signature: Robert W. Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE