IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIECE-LISA INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 2:12-cv-00400-RWS-RSP |
| v. | § | (lead case) |
| | § | No. 2:14-cv-00070-RWS-RSP |
| DISNEY STORE USA, LLC ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this trademark case, the Court now considers Defendants' Motion to Dismiss And/Or Strike Portions of Plaintiff's Fourth Amended Complaint [Dkt. # 238]. The Court will also consider Defendants' Motion to Quash Notices of Deposition [Dkt. # 239]. For the reasons set forth below, the Court concludes both motions should be granted.

**I.   BACKGROUND**

Deice-Lisa Industries, Inc. (DLI) is the owner of United States Registration No. 3,361,849 for the trademark LOTS OF HUGS. 2d Am. Compl. [Dkt. # 46] ¶ 9. Since 1997, DLI has sold stuffed toy bear products branded with the LOTS OF HUGS mark. *Id.* ¶ 13.

In 2010, Disney released *Toy Story 3*, an animated film featuring Disney heroes Sherriff Woody and Buzz Lightyear. *Id.* ¶¶ 20–21. In the film, Woody and Buzz battle Lots-O'-Huggin' Bear (Lotso for short), a hot pink teddy bear with a big nose and a southern accent. The film received five Academy Award nominations, won two Academy Awards,

grossed over $1 billion worldwide, became the highest-grossing film of 2010 and the third highest-grossing animated film of all time, and was the first animated film to generate $1 billion in ticket sales. *Id.* ¶ 28. One source estimated *Toy Story 3* merchandise would generate more than $7.3 billion in retail sales. *Id.*

This dispute relates to that merchandising revenue and, more specifically, Disney's marketing and sales of Lots-O'-Huggin' merchandise. DLI alleges Disney's sales of Lots-O'-Huggin' merchandise infringes DLI's LOTS OF HUGS trademark. *Id.* ¶ 38. DLI further alleges its property rights in the LOTS OF HUGS mark have been destroyed by the overwhelming success of *Toy Story 3* and related infringing sales of Lots-O'-Huggin' merchandise. *Id.* ¶ 39.

## II.  PROCEDURAL HISTORY

The relevant procedural history concerns DLI's Second, Third, and Fourth Amended Complaints. DLI lodged its Second Amend Complaint in January 2014, in which it alleged Defendants Disney Store and Disney Shopping infringed DLI's trademark rights by using LOTS-O'-HUGGIN' and LOTSO on labels, signs, prints, packages, products wrappers, receptacles, and advertisements. 2d Am. Compl. [Dkt. # 46] ¶ 38.

In November 2014, DLI asked for leave to file its Third Amended Complaint. Relative to the Second Amended Complaint, DLI sought to join ten additional Disney-related parties. The Third Amended Complaint also expanded the allegedly infringing activities to use of the Lotso character at parks and resorts, on cruise ships, during touring ice shows, and in books and gaming products. 3d Am. Compl. [Dkt. # 136] at 6–10 (¶¶ e.–n.).

Disney opposed leave, arguing that DLI's Third Amended Complaint would create jurisdictional and venue-related problems and significantly alter the nature and scope of the case. Defs.' Resp. [Dkt. # 141]. In particular, Disney noted all ten prospective defendants have Southern California offices, the overwhelming preponderance of evidence is in California, there is no evidence in Texas, and there are no fact witnesses in Texas. *Id.* at 13. Disney also asserted there was no admissible evidence of any kind to establish jurisdiction in Texas. *Id.*

Siding with DLI, the Court granted leave to amend. Order [Dkt. # 149]. The Court concluded there would be substantial efficiencies in addressing DLI's claims against all defendants together. *Id.* at 3.

Shortly after the Third Amended Complaint became operative, the ten newly joined defendants moved to dismiss under Fed. R. Civ. P. 12(b) and to transfer the case to the Central District of California. Defs.' Mot. to Dismiss [Dkt. # 164]; Defs.' Mot. to Transfer Venue [Dkt. # 165]. In opposing the motions, DLI did not address the new defendants' evidence and instead advanced a "unified entity" theory of personal jurisdiction—that all defendants are "one big company" for purposes of personal jurisdiction. Pl.'s Resp. to Defs.' Mots. To Dismiss [Dkt. # 168] at 5. The Disney defendants rejected this "unified entity" theory, arguing it required the untenable result that "wherever *any* Disney company is subject to personal jurisdiction, *every* Disney company is subject to personal jurisdiction." Defs.' Consolidated Reply [Dkt. # 172] at 5 (emphasis in original).

While considering the motions to dismiss and transfer, the Court concluded the

Third Amended Complaint "changed the nature of this case" and reconsidered its prior order granting leave:

> Recent proceedings have made clear that the added claims bear less connection to the original claims than the Court originally perceived. Even Plaintiff's recent papers have made this evident to the Court. (*See* Dkt. No. 192 at 3 ("Although no case law was found directly on point"); Dkt. No. 192 at 4 ("Because of the somewhat *sui generis* circumstances of this case, no case law on point was discovered.")).

Mem. Order [Dkt. # 206] at 2–3. The Court then concluded it "improvidently granted" DLI's motion for leave and vacated the order, thus reviving the Second Amended Complaint. DLI lodged objections with Judge Schroeder. Pl.'s Objs. [Dkt. # 210].

While awaiting Judge Schroeder's review, the parties jointly moved the Court to vacate the then-current Docket Control Order and stay the case. Agreed Mot. to Vacate Am. Docket Control Order [Dkt. # 215]. In the motion, the parties agreed:

1. Fact discovery is closed, and there will be no further discovery propounded, depositions taken, or other supplementation of the record or assertion of additional claims, defenses, or theories of liability or damages by Plaintiff or Defendants, with the exception of any discovery that may be ordered in connection with Plaintiff's [then-pending] motions to compel (Dkt. 192, 204);

2. No new or supplemental expert reports shall be exchanged, and no new expert opinions proffered, except any reports or opinions that (i) Defendants may offer with respect to Plaintiff's claims against the ten defendants added by the Third Amended Complaint, should that be restored as the operative pleading, and any rebuttals thereto; (ii) Plaintiff may offer with respect to damages against Defendant Disney Enterprises, Inc. should the Third Amended Complaint not be restored as the operative pleading;

> 3. Except as set forth above, the only additional discovery to be conducted by any party will be expert depositions[.]

*Id.* at 4–5. The Court granted the motion shortly thereafter. Order [Dkt. # 216].

More recently, during a June 2017 status conference, DLI's counsel informed the Court that if its Third Amended Complaint was not reinstated, Defendants need only update their previously produced financial information related to sales of Lotso merchandise. Klieger Decl. [Dkt. # 239-1] ¶ 7.[1] Plaintiff's expert would then prepare a supplemental damages report, which Defendants' damages expert could rebut, and expert depositions would be taken. *Id.* DLI's counsel noted 90 days would be sufficient for these tasks. *Id.* ¶ 8.

Shortly after the June 2017 status conference, Judge Schroeder overruled DLI's objections. Mem. Op. & Order [Dkt. # 223]. The Court then issued a new scheduling order based on counsels' representations during the status conference. Am. Docket Control Order [Dkt. # 224]. The Court's new schedule set dates for, among other things, filing amended pleadings, additional designations of expert witnesses, and a new discovery deadline.

But on July 25, 2017, DLI filed is Fourth Amended Complaint [Dkt. # 228]. Relative to the Second Amended Complaint, the Fourth Amended Complaint—like the Third Amended Complaint before it—expands the scope of allegedly infringing activities to use of the Lotso character at parks and resorts, on cruise ships, during touring ice shows, and

---

[1] Although there is no record of the status conference, DLI does not dispute Mr. Klieger's recollection. Moreover, Mr. Klieger's declaration is consistent with the Court's recollection of the status conference.

in books and gaming products. *See, e.g.*, 4th Am. Compl. [Dkt. # 228] ¶ 70. The Fourth Amended Complaint also, for the first time, asserts theories of vicarious liability for infringement. *See, e.g.*, *id.* ¶ 80 ("because Defendant DEI is vicariously liable for the infringements committed by the other Disney entities that it licenses . . . DEI is liable for the profits obtained by those other Disney entities from their infringement and for Plaintiff DLI's damages suffered").

Then, in August 2017, DLI issued deposition notices and document requests relating to receipts, revenue, and intercompany transfers among various Disney entities. *See, e.g.*, [Dkt. # 239-2], [Dkt. # 239-3], [Dkt. # 239-4], [Dkt. # 239-5]. These requests contemplate production of documents dating back to 2010 and relating to any Disney entities that in any manner use the Lotso character. *See, e.g.*, Pl's 2d Am. Not. of Rule 30(b)(6) Dep. Of Disney Consumer Products, Inc. [Dkt. # 239-3] at 6.

Disney now moves to strike DLI's Fourth Amended Complaint and to quash DLI's deposition notices. Disney complains DLI's Fourth Amended Complaint violates both the letter and spirit of the Court's prior orders and the agreement of the parties.

## III. DISCUSSION

The Court will grant both motions. First, the parties agreed, among other things, that fact discovery was closed and there would be no further discovery propounded, with the exception of any discovery ordered in connection with then-pending motions to compel. Moreover, the parties agreed they would not add new claims, defenses, or theories of lia-

bility. DLI's Fourth Amended Complaint contravenes the parties' agreement by adding theories of contributory infringement and vicarious liability.

Admittedly, the Court inadvertently overlooked this prior agreement of the parties when issuing July 2017 Docket Control Order. But even so, the Court did not intend the new DCO to allow DLI the unfettered right to again change the nature of this case.

Yet DLI's Fourth Amended Complaint does just that. This is a federal trademark and unfair competition case concerning DLI's LOTS OF HUGS trademark. With its character-use theory, DLI attempts to morph this case into a copyright or trade dress case, despite never alleging those causes of action. The Court therefore agrees with Disney that DLI's Fourth Amended Complaint should be struck and the pending depositions should be quashed.[2]

## IV.    CONCLUSION AND ORDERS

First, the Court **GRANTS** Defendants' Motion to Dismiss And/Or Strike Portions of Plaintiff's Fourth Amended Complaint [Dkt. # 238] and **STRIKES** Plaintiff's Fourth Amended Complaint. Plaintiff's Second Amended Complaint remains the operative Complaint in this proceeding.

Second, the Court **GRANTS** Defendants' Motion to Quash Notices of Deposition [Dkt. # 239] and **QUASHES** these notices of deposition:

---

[2] DLI appears to concede DLI's depositions notices are only proper if the Fourth Amended Complaint remains the operative pleading. *See* Pl.'s Opp'n [Dkt. # 243] at 2 ("For present purposes what is important is that the deposition notices are within the scope of the Fourth Amended Complaint . . . .").

- Plaintiff's Second Amended Notice of Rule 30(b)(6) Deposition of Disney Enterprises, Inc. ("DEI") and First Notice of Deposition of Brian Rupp, a DEI Employee;

- Plaintiff's Second Amended Notice of Rule 30(b)(6) Deposition of Disney Consumer Products, Inc.;

- Plaintiff's Third Rule 30(b)(6) Notice of Deposition of Disney Store USA, LLC; and

- Plaintiff's Third Rule 30(b)(6) Notice of Deposition of Disney Shopping, Inc.

**SIGNED this 29th day of September, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE