# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DIECE-LISA INDUSTRIES, INC., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> DISNEY STORE USA, L.L.C., DISNEY SHOPPING, INCORPORATED, BUENA VISTA HOME ENTERTAINMENT, INCORPORATED, WALT DISNEY STUDIOS MOTION PICTURES, BUENA VISTA THEATRICAL GROUP, LIMITED, DISNEY INTERACTIVE STUDIOS, INCORPORATED, DISNEY LICENSED PUBLISHING-DISNEY BOOK GROUP, L.L.C., WALT DISNEY RECORDS, DISNEY DESTINATIONS, L.L.C., WALT DISNEY PARKS, RESORTS U.S., INCORPORATED, MAGICAL CRUISE COMPANY, LIMITED, and MAGIC KINGDOM, INCORPORATED, § <br> § <br> *Defendants*. § | Case No. 2:12-cv-00400-RWS-RSP |

## MEMORANDUM ORDER

Before the Court is an Opposed Motion to Transfer to the Central District of California, Western Division ("Motion to Transfer"), which was filed by Buena Vista Home Entertainment, Inc., Buena Vista Theatrical Group, Ltd., Disney Consumer Products, Inc., Disney Destinations, LLC, Disney Enterprises Inc, Disney Interactive Studios, Inc., Disney Licensed Publishing-Disney Book Group, LLC, Disney Shopping, Inc., Disney Store USA, LLC, Magic Kingdom, Inc., Magical Cruise Co., Ltd., Walt Disney Parks & Resorts U.S., Inc., Walt Disney Records, Walt Disney

Studios Motion Pictures. Dkt. No. 165.[1] After due consideration, the Court will transfer this case to the Central District of California, Western Division pursuant to § 1404(a).

## I.     APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflict of law. *Id*.

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google LLC*, 2:17-CV-00442-JRG, 2018 WL 4026760, at *2 (citing *Volkswagen II*, 545 F.3d at 315). However, a moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. *Id*. (citing *Volkswagen II*, 545 F.3d at 315). By applying this

---

[1] Various defendants also filed an Opposed Motion to Dismiss Pursuant to Rules 12(b)(2), (3) and (6) (Dkt. No. 164) and an Opposed Motion to Dismiss Pursuant to Rules 12(b)(3) and (6) (Dkt. No. 162). However, the Court will focus on the Motion to Transfer in this Order, as it may well moot the motions to dismiss. While Defendants Disney Enterprises Inc. and Disney Consumer Products, Inc. were parties to this Motion to Transfer, those Defendants have since been dismissed. *See* Case No. 2:14-cv-00070, Dkt. No. 51.

heightened standard, the plaintiff's choice of forum is given the appropriate deference. *Id*. (citing *Volkswagen II*, 545 F.3d at 315).

## II. ANALYSIS

As an initial matter, the Court notes that this case could have been filed in the Central District of California ("C.D. Cal.").[2] The Court also notes that Plaintiff fails to engage on the vast majority of the convenience factors within its Response. *See generally* Dkt. No. 171. Instead, Plaintiff argues that "although the private and public interest factors apply to most transfer cases, they are not necessarily exhaustive or exclusive, and no single factor is dispositive." *Id*. at 4 (internal citations and marks omitted). While it is true that relevant facts should be considered even if they do not neatly fit into a given transfer factor, Defendants' arguments on these factors are largely unrebutted. Because of this and because of the strength of Defendants' arguments, the Court concludes that C.D. Cal is a clearly more convenient forum and that transfer is appropriate. The Court will proceed through each of the factors below.

### a. Other practical problems that make trial of a case easy, expeditious, and inexpensive

Here, the "other practical problems that make trial of a case easy, expeditious, and inexpensive" factor weighs strongly in favor of transfer, and Plaintiff has not shown otherwise. This Court appears to lack personal jurisdiction over at least Magic Kingdom, Inc. ("MKI"), Magical Cruise Co., Ltd. ("MCC"), and Walt Disney Parks & Resorts U.S., Inc. ("WDPR"). All of the defendants could be addressed at once in C.D. Cal., while this Court could only resolve issues for

---

[2] The Court gives little weight to Plaintiff's arguments that this case could not have been brought in C.D. Cal. Plaintiff appears to argue that C.D. Cal. would lack personal jurisdiction over some of the Defendants at the time the suit was filed and that this issue could not be cured by the consent of Defendants. While the premise is not accepted, venue would still be proper there under 28 U.S.C. § 1391(b)(3).

a subset of those defendants in this district. Transfer is appropriate in this case for several reasons: (1) to maximize the efficiency of the proceedings by resolving issues in one forum rather than engaging in multi-district litigation; (2) to minimize the risk of conflicting rulings; and (3) to eliminate any issues with the statute of limitations that would be created by dismissing this case without prejudice. Transfer is also appropriate because Plaintiff has previously argued that all of these Defendants should be addressed in one proceeding.

Personal jurisdiction over MKI, WDPR, and MCC appears to be lacking for two primary reasons: (1) Plaintiff argues that the acts of some Disney entities should be imputed to other Disney entities, but Plaintiff has not sufficiently overcome the presumption of institutional independence; and (2) Plaintiff has not otherwise shown how MKI, WDPR, and MCC are subject to personal jurisdiction in this Court under a specific jurisdiction theory based on contacts that are attributable to those entities.

### i. Plaintiff has not overcome the presumption of corporate separateness.

Within the Fifth Circuit's previous decision in this case, the Fifth Circuit provided guidance on the "presumption of institutional independence":

> "Generally, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). This "presumption of institutional independence . . . may be rebutted," however, "by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between a resident and nonresident entity." *Id*. In determining whether the plaintiff "has overcome the presumption of corporate separateness" such that the corporations may be "fuse[d] . . . for jurisdictional purposes," the following factors, referred to as the *Hargrave* factors, guide our inquiry: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities

maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Id*; *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). We have noted that "the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos," even where other factors support an alter ego relationship. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010); *see also Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) ("[I]t is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent.").

*Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019).

The Fifth Circuit determined that Plaintiff had not overcome the presumption of institutional independence for the two "IP entities" in the case. *Id*. at 250–52.[3] In doing so, the Fifth Circuit noted that Plaintiff "makes the conclusory assertion that 'the infringement by all the . . . Disney companies is . . . interconnected and tightly controlled' but includes no facts explaining how Disney's retail entities or parent corporation exert such control over the IP entities such that jurisdiction over one corporation in the Disney enterprise could confer jurisdiction over all related entities." *Id*. at 252. The court then stated that "[t]hese conclusory allegations are insufficient for Diece-Lisa to make out a prima facie case of personal jurisdiction based on the franchise theory." *Id*. The court then rejected the other personal jurisdiction arguments raised by Plaintiff and then ultimately concluded that "the district court properly declined to exercise personal jurisdiction over the IP entities." *Id*. at 253.

Plaintiff's theory against the new parties is very similar to the theory against the IP Entities. Plaintiff argues that Defendants form one large, conglomerated company and that the contacts of various entities should be imputed between each other. Dkt. No. 168 at 3–7. To support this

---

[3] These "IP entities" were Disney Enterprises, Inc. ("DEI") and Disney Consumer Products, Inc. ("DCP"). *Id*. at 244.

proposition, Plaintiff argues that (1) DEI has made judicial admissions to show that all Disney entities are part of one big company (*id*. at 4–6), (2) that Disney requires licensees to tightly control the appearance of licensed products (*id*. at 6–7), and (3) that Disney cross-markets itself as one entity (*id*. at 7). However, these arguments are not strong enough individually or collectively to overcome the presumption of institutional independence.

Plaintiff does not raise significant arguments on four of the five *Hargrave* factors, including (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; and (4) whether the entities maintain separate accounting systems. And while Plaintiff argues that Disney requires licensees to tightly control the appearance of licensed products, this does not show that the parent exercises complete control over the subsidiary's general policies or daily activities.

The Fifth Circuit rejected substantially the same arguments for the IP Entities, relying at least partially on the *Hargrave* factors. *Diece-Lisa*, 943 F.3d at 250–53. The Fifth Circuit noted that Plaintiff did not allege that the entities failed to observe corporate formalities and did not provide any suggestion that the IP entities control the general policies or day to day activities of the retail entities. Thus, the Fifth Circuit's reasoning for finding a lack of personal jurisdiction applies similarly to MKI, WDPR, and MCC.

Since the Fifth Circuit's decision, the Court issued an Order directing the parties to inform the Court whether they "believe supplemental briefing is necessary to address any changes in law for Defendants' Motions to Dismiss." Dkt. No. 277 at 1. In response to this Order, the Parties entered a Joint Notice Regarding Briefing and Motions in which they stated that "[t]he parties are in agreement that no supplemental briefing is necessary as to the Defendants' Motions to Dismiss."

Dkt. No. 278 at 1. Thus, Plaintiff was given an opportunity to provide additional briefing to cure any deficiencies on these issues.

### ii. Plaintiff has not otherwise shown that Defendants are each subject to personal jurisdiction in Texas.

Plaintiff largely argues that the presumption of institutional independence has been rebutted and that the contacts of one Disney related entity should be imputed to all other Disney related entities. *See* Dkt. No. 168 at 3–13. However, the Court concluded above that Plaintiff has not sufficiently shown that this presumption had been overcome. Even considering the allegations included within the operative complaint that were directed towards the defendants specifically, the alleged contacts of the MKI, WDPR, and MCC each lack a sufficient connection to the present lawsuit.

"[T]he plaintiff's cause of action [must] arise[] out of or result[] from the defendant's forum-related contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The Fifth Circuit also provided additional guidance on this issue in this case:

> Specific jurisdiction "encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum." [*Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)]. Specific jurisdiction exists when two circumstances are met: (1) "a nonresident defendant has purposefully directed its activities at the forum state," and (2) "the litigation results from alleged injuries that arise out of or relate to those activities." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)) (internal quotation marks omitted). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 284, 134 S.Ct. 1115 (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174).

*Diece-Lisa*, 943 F.3d at 250. The Court will apply these principles for MKI, WDPR, and MCC separately below.

### 1. *Magic Kingdom, Inc. ("MKI")*

For MKI, Plaintiff provided the following personal jurisdiction related allegations in the Third Amended Complaint:

> As to Defendant MKI, it is routinely and systematically doing business within the State of Texas, and within this District, by advertising, marketing, promoting, and booking reservations for the Magic Kingdom Park via its interactive websites at http://disneyworld.disney.go.com/destinations/magic-kingdom and www.magicalgetaway.com/disney and its 800-881-2972 toll free reservation number (see Exhibit 19). Upon information and belief, Defendant MKI sells *Toy Story 3* merchandise at the Magic Kingdom Park and further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'" bear character, in costume at such venues.

Dkt. No. 136 at ¶18(n). Based on the allegations within the Third Amended Complaint, the allegedly infringing conduct by MKI appears to be the alleged sale of *Toy Story 3* merchandise at the Magic Kingdom Park and the use of *Toy Story 3* characters in costume at such venues. *See id*. Plaintiff alleges that MKI has a sufficient connection to the state of Texas through its "advertising, marketing, promoting, and booking reservations for the Magic Kingdom Park via its interactive websites" and its toll-free reservation number. *Id*.

Defendants argue that Plaintiff does not allege any use of the Lotso character in connection with MKI's advertising, marketing, promoting, and booking of reservations for the Magic Kingdom Park. Dkt. No. 164 at 11. Plaintiff does not attempt to rebut this point in its briefing. This leaves the Court to resolve whether the alleged contacts of "advertising, marketing, promoting, and booking reservations for the Magic Kingdom Park via its interactive websites" and its toll-free reservation number in Texas are sufficient to confer personal jurisdiction over MKI. The Court

cannot conclude on this record that there is a sufficient connection between these contacts and the present litigation.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation,'" and the attenuated relationship between the cause of action and argued contacts suggests that Plaintiff has failed to make a prima facie case of personal jurisdiction. *Walden*, 571 U.S. at 283–84 (2014) (quoting *Keeton*, 465 U.S. at 775 (1984)) (internal quotation marks omitted); *see also Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983) (citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)) (directing courts to consider "the relationship between the cause of action and the contacts"). The contacts with Texas are tangential to the issues within the case. This action is largely a trademark infringement action (Dkt. No. 136 at ¶¶ 63–66) with other related claims for federal unfair competition (*id*. at ¶¶ 53–62) and common-law unfair competition (*id*. at ¶¶ 67–69). Plaintiff has not argued or otherwise shown how MKI's advertising, marketing, promoting, and booking of reservations in Texas will have significant probative value to Plaintiff's causes of action. In the discussion of these causes of action, Plaintiff does not discuss these activities of advertising, marketing, promoting, and booking of reservations, suggesting that the activities have little relation to the causes of action. Further, case law from other courts applying Fifth Circuit law support the conclusion that the "arises out of or relates to" requirement has not been satisfied here. *Gallet v. Ford Motor Co.*, Case No. 16–13789, 2017 WL 1684639, at *4 (E.D. Mich. May 3, 2017) (applying Fifth Circuit law and concluding that the advertisements of products nationally did not give rise to personal jurisdiction in a forum as the Plaintiff failed to show that the "claims arise out of or are related to Defendant's advertisements"); *see also Drake v. Mercedes Benz USA*, No. 6:16-CV-1228, 2018 WL 540874, at *4 (W.D. La. Jan. 4, 2018), *report*

*and recommendation adopted*, No. 6:16-CV-1228, 2018 WL 522746 (W.D. La. Jan. 23, 2018) (concluding, where a plaintiff alleged that a parts kit within his purchased car was defective, that the cause of action "simply does not arise out of [Defendants'] forum contacts" as "[t]here is no allegation, nor can there be, that any of [Defendants'] Louisiana contacts were connected in a meaningful way with the manufacture, distribution, or sale of the double-sided tape or the parts kit purchased by the Plaintiff").

In analyzing the "arises out of or relates to" requirement, some courts within the Fifth Circuit have considered whether the contacts with the relevant forum were a but-for cause of the plaintiff's claims. *Fed. Trade Comm'n v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960, 973 (W.D. Tex. 2019) (citing *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 231–32 (5th Cir. 1995)) (finding specific jurisdiction in a malpractice case because "there would be no injury or basis for a claim but for the fact that [the defendants] represented [the plaintiff] in Texas"); *see also Benson v. Rosenthal*, 116 F. Supp. 3d 702, 710 (E.D. La. 2015) (applying a "but-for" test for the "arising out of or related to" requirement instead of a more restrictive "proximate cause" test and stating that this but-for test "has been criticized for being *overinclusive* and lacking a limiting function") (emphasis added). Here, MKI's advertising, marketing, promoting, and booking of reservations in Texas was not a but-for cause of plaintiff's claims since, even if those activities were never conducted, the alleged acts of infringement would still occur through the use of the *Toy Story 3* merchandise and characters in the theme park. Thus, even under a more overinclusive "but-for" test, Plaintiff still has not shown a sufficient connection between advertising, marketing, promoting, and booking of reservations and the actual alleged conduct giving rise to Plaintiff's claims.

### 2. *Walt Disney Parks and Resorts U.S., Inc. ("WDPR")*

The relevant facts for WDPR are virtually identical to the relevant facts for MKI. For WDPR, Plaintiff provided the following personal jurisdiction related allegations in the Third Amended Complaint:

> As to Defendant WDPR, it is routinely and systematically doing business within the State of Texas, and within this District, by advertising, marketing, and promoting its various resorts, including Disneyland Resort, Walt Disney World Resort, Tokyo Disney Resort, Disneyland Paris, Hong Kong Disneyland Resort, and Shanghai Disney Resort and related theme parks, by its various interactive websites at http://disneyparks.disney.go.com (see Exhibit 17) and http://disneyworld.disney.go.com/resorts (see Exhibit 18). Upon information and belief, Defendant WDPR sells *Toy Story 3* merchandise at such resorts and theme parks and further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'" bear character, in costume at such venues.

Dkt. No. 136 at ¶ 18(l).

Defendants argue that "Plaintiff does not allege that WDPR made any use of the Lotso character in connection with its advertising, marketing, or promotion of these out-of-state resorts, whether in Texas or anywhere else." Dkt. No. 164 at 12. Plaintiff does not effectively rebut this point. Thus, the question is whether the alleged contacts of "advertising, marketing, and promoting its various resorts" via WDPR's website is sufficiently connected to this litigation. This activity has little bearing on the causes of action here, and the but-for test suggests that the allegedly infringing contact would still occur even if these Texas contacts did not exist.

### 3. *Magical Cruise Co., Ltd. ("MCC")*

For MCC, Plaintiff provided the following personal jurisdiction related allegations in the Third Amended Complaint:

> As to Defendant MCC, it is routinely and systematically doing business within the State of Texas, and within this District, by

> distributing, marketing, and selling vacation/travel and cruise ship packages through Texas retailers and/or travel agents and online at its interactive websites at http://disneyvacationclub.disney.go.com/destinations/ and http://disneyparks.disney.go.com/ (see Exhibit 17) and http://disneycruise.disney.go.com/ (see Exhibit 16). Upon information and belief, Defendant MCC has distributed, marketed, and sold these vacation/travel/cruise packages in Texas and in this District. Further, <u>Defendant DD</u> sells *Toy Story 3* merchandise on such cruise ships, and further has *Toy Story 3* characters, such as the "Lots-O'-Huggin'" bear character, in costume on such cruise ships.

Dkt. No. 136 at ¶ 18(m). While Plaintiff alleges that MCC has distributed, marketed, and sold these travel packages in Texas and in this District, this alleged contact lacks a sufficient nexus with the claims asserted in the present case.

As Defendants point out, Plaintiff has not plead or argued that the accused Lotso character was ever used in conjunction with the distribution, marketing, or sale of travel packages in Texas. Plaintiff merely alleges that infringing conduct by MCC occurs on the cruise ships. *See id*. Thus, the critical question is whether the distribution, marketing, and sale of travel packages in Texas and in this District are sufficiently connected to this litigation. For the same reasons stated above with respect to MKI and WDPR, the Court concludes that Plaintiff has not shown that personal jurisdiction is appropriate within this forum for MCC.[4]

### iii. Plaintiff has not made a sufficient showing to justify jurisdictional discovery

While Plaintiff included alternative requests for jurisdictional discovery (Dkt. No. 168 at 8 n.7), the Court denies Plaintiff's request because the record shows that the requested discovery is not likely to produce the evidence that would change the analysis. The party seeking discovery

---

[4] In addition to the reasons set forth for MKI and WDPR, the Court also points out that Plaintiff attempts to rely upon the alleged sale of *Toy Story 3* characters on cruise ships by Disney Destinations LLC ("DD"), not MCC. Thus, the connection between MCC, the forum, and this litigation is even further attenuated. *See Walden*, 571 U.S. at 283–84.

bears the burden of showing its necessity. *Joiner v. United States*, 946 F.3d 810, 817 (5th Cir. 2020) (citing *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013); *Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir. 2009)). A party is "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to" withstand a motion to dismiss. *See id.* (citing *Freeman*, 556 F.3d at 342). "The district court . . . has broad discretion in all discovery matters"—"[t]he decision not to permit depositions on a motion to dismiss for lack of personal jurisdiction is specifically one for the trial court's discretion, and '(s)uch discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) (citing *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 550 (5th Cir. 1980), *cert. denied*, 454 U.S. 927 (1981); *Associated Metals & Minerals Corp. v. S. S. Geert Howaldt*, 348 F.2d 457, 459 (5th Cir. 1965)). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.*; *accord Bonner v. Triple-S Mgmt. Corp.*, 661 F. App'x 820, 822 (5th Cir. 2016). "Discovery need not be afforded 'where the discovery sought could not have added any significant facts.'" *Bonner*, 661 F. App'x at 822 (citing *Wyatt*, 686 F.2d at 283).

"To support a request for jurisdictional discovery, the plaintiff must first make 'a preliminary showing of jurisdiction.'" *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005; *accord Due's Wrecker Serv. v. Metro Tow Trucks (Canada) Ltd.*, No. 9:16-CV-13-MHS-ZJH, 2016 WL 5329634, at *3 (E.D. Tex. Aug. 30, 2016), *report and recommendation adopted*, 2016 WL 5079987 (E.D. Tex. Sept. 19, 2016). "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Nat'l Sur. Corp. v.*

*Ferguson Enterprises, Inc.*, 3:13-CV-2045-M, 2014 WL 5472436, *1 (N.D. Tex. Oct. 29, 2014); *accord Due's Wrecker*, 2016 WL 5329634, at *3. "A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction." *Id*.

Even if the Court were to permit the jurisdictional discovery to the extent requested by Plaintiff, that would not resolve the flaws with Plaintiff's arguments on personal jurisdiction against MKI, WDPR, and MCC. Plaintiff states within its Response that it "requests leave to conduct jurisdictional and venue discovery . . . to prove up (a) the sale of LOTS-O-HUGGIN' toys in the Eastern District by [Disney Store USA, LLC ("DSU")] and (b) online to persons in the Eastern District by [Disney Shopping, Inc. ("DSI")]." Dkt. No. 168 at 8 n.7. However, further discovery on these points would be a futile endeavor. As Plaintiff recognizes, neither DSU nor DSI contest personal jurisdiction in this district. *Id*. For the reasons discussed above and within the Fifth Circuit's opinion, the contacts of DSU and DSI may not be imputed onto the other Defendants.

Additionally, it appears that Plaintiff seeks discovery into Disney Enterprises Inc.'s ("DEI") activities in licensing and marketing the accused mark across the country. Dkt. No. 175 at 8 n.12. However, the Fifth Circuit rejected Plaintiff's theory on licensing by DEI and concluded that even DEI was not subject to personal jurisdiction here, so it would make little sense to permit further discovery into DEI's contacts with this state. Additionally, even if DEI had sufficient contacts with the state of Texas, Plaintiff would still have to show a connection between DEI and the affiliated Disney entities that would be sufficient to overcome the presumption of institutional independence. Plaintiff's briefing currently is insufficient to establish this point, and Plaintiff does not request further discovery on this issue. Even if such a request were made, the Court would deny the request because Plaintiff had ample time to look for additional facts to support its claims

of personal jurisdiction and it also had an opportunity to supplement its briefing even after the Fifth Circuit ruling, yet it did not provide any additional reasoning to support its position.

### iv. Effect of personal jurisdiction concerns on this transfer factor

The concerns with personal jurisdiction in this Court weigh strongly in favor of transfer. Plaintiff would likely be required to proceed with a parallel case against MKI, WDPR, and MCC to pursue claims against those entities. Thus, transfer is appropriate in this case for several reasons: (1) to maximize the efficiency of the proceedings by resolving issues in one forum rather than engaging in multi-district litigation; (2) to minimize the risk of conflicting rulings; and (3) to eliminate any issues with the statute of limitations that would be created by dismissing this case without prejudice. Transfer is also appropriate because Plaintiff has previously argued that all of these Defendants should be addressed in one proceeding—transferring this case to C.D. Cal. would address this concern.

Other courts have determined that judicial economy is served if transfer would obviate a question of personal jurisdiction. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 512 (D.Del.1999); *see also In re Pfizer Inc.*, 364 F. App'x 620, 622 (Fed. Cir. 2010) (citing *Mentor Graphics* and concluding that a district court did not abuse its discretion in ruling that judicial economy and the interests of justice weighed strongly in favor of transfer where the district court concluded that "substantial, unresolved questions remain with regard to whether this District has personal jurisdiction over Defendant Apotex Inc." and also stated that it would not exercise jurisdiction over defendant without jurisdictional discovery).

For these reasons, the personal jurisdiction concerns weigh strongly in favor of transfer.

### b. The availability of compulsory process to secure the attendance of witnesses

Defendants have presented persuasive arguments to show that a substantial number of non-party witnesses reside in or near C.D. Cal, making trial more convenient for those witnesses in C.D. Cal. Dkt. No. 165 at 5–8. Defendants argue that the parties have "identified at least 13 non-party fact witnesses who have material and relevant information." *Id.* at 6. Defendants identified these witnesses specifically. *See* Dkt. No. 165-15. Defendants argue that "[n]one of the non-party witnesses works or resides anywhere in Texas" and "[n]ine of the 13 non-party witnesses are based in Emeryville, California." *Id.* at 6–7 (citing Dkt. No. 165-13 at ¶ 5). Defendants point out that the one-way travel time for these witnesses would be a little over an hour to C.D. Cal while the same witnesses would be required to travel for more than five hours to reach this courthouse. *Id.* at 7. Defendants also state that "[t]hree-quarters of [the non-party fact witnesses] are based in California" and that "the number of California witnesses will only increase with the addition of the 10 new defendants." *Id.* (citing Dkt. No. 165-15; Dkt. No. 165-13 at ¶ 5). Plaintiff again does not rebut this.

C.D. Cal. has absolute subpoena power for the nine witnesses that are listed on the Schedule A document (Dkt. No. 165-15), and none of the witnesses on that document would be subject to absolute subpoena power in E.D. Tex. "The fact that the transferee venue is a venue with useable subpoena power . . . weighs in favor of transfer, and not only slightly." *In re Genentech, Inc.*, 556 F.3d 1388, 1345 (Fed. Cir. 2009). This factor weighs in favor of transfer.

### c. The cost of attendance for willing witnesses

Defendants have also shown that the cost of attendance for willing witnesses factor weighs in favor of transfer. *Id.* at 7–8. Defendants point out that "eleven of the 14 defendants have offices in the Central District of California, and nearly all of the witnesses likely to have relevant

information are based there." *Id*. at 8 (citing various declarations for support). Defendants also point out that "none of the party witnesses works or resides in Texas" and that "[t]he Central District of California is also more convenient for witnesses employed by the other three defendants." *Id*. at 8 (citing various declaration for support). Defendants identified these witnesses specifically. *See* Dkt. No. 165-16.

In response, Plaintiff argues that Defendants have frequently filed lawsuits in Texas and that any inconvenience to these witnesses is overstated. Dkt. No. 171 at 13. However, the Court gives this argument little weight. Plaintiff fails to engage as to the convenience for the specific witnesses that were identified in this case, and Plaintiff did not identify any relevant witnesses residing in Texas.

Accordingly, the Court concludes that this factor weighs in favor of transfer.

### d. The relative ease of access to sources of proof

Defendants state that "[n]ine of the 14 defendants are headquartered in the Central District of California, and all but two of the defendants have offices there." Dkt. No. 165 at 8 (citing various declarations for support). In trademark infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer." *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) (internal quotation marks omitted). Thus, this argument by Defendants suggests that transfer is appropriate.

Defendants have also pointed out that the non-party Pixar played a critical role in the development of the *Toy Story 3* movie and states that Pixar will likely have important documents and other information for this case. *Id*. at 8–9. Defendants state that Pixar is based in Emeryville, California. *Id*. at 9. Trial in C.D. Cal would permit documents from Pixar's California headquarters to be more conveniently transferred.

Plaintiff does not meaningfully engage on this issue, leaving Defendants' assertions largely unrebutted. Plaintiff does argue that "Pixar is a Disney company and therefore should be considered as 'party witnesses' and thus not weighed heavily in the calculus." Dkt. No. 171 at 12. Even accepting this argument as true, Plaintiff has not identified any evidence in Texas or any evidence that would be more conveniently transported to E.D. Tex. for trial. The Court therefore concludes that this factor weighs in favor of transfer.

e.  **The administrative difficulties flowing from court congestion**

Defendants argue that this factor is either neutral or weighs slightly in favor of transfer. Dkt. No. 165 at 14. Defendants argue that the case median time interval from filing to disposition of civil cases is 4.7 to 6.9 months longer in E.D. Tex. than in C.D. Cal. *Id*. They also argue that judges in E.D. Tex. carry higher caseloads than judges in C.D. Cal. *Id*. Plaintiff argues that this case would be more quickly resolved in E.D. Tex. because C.D. Cal. would effectively be required to start this case over. Dkt. No. 171 at 10. The Court concludes that this factor is neutral.

f.  **The local interest in having localized interests decided at home**

Defendants argue that C.D. Cal has a very strong interest in this litigation while E.D. Tex. "has no relation whatsoever to this litigation." Dkt. No. 165 at 12. Defendants contend that retail sales of Toy Story 3 products or the presentation of the movie in theatres is insufficient to give E.D. Tex. a local interest in this case, reasoning that "local interests that could apply virtually to any judicial district or division in the United States are disregarded in the transfer analysis." *Id*. at 13 (quoting *Acqis LLC v. EMC Corp.*, 2014 WL 5485900, at *2 (E.D. Tex. 2014) (quoting *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008))).

Plaintiff raises little arguments to rebut Defendants' arguments on this factor. Because Plaintiff has not shown how this district has a local interest in this case, the Court concludes that this factor favors transfer, however slightly.

### g. The familiarity of the forum with the law that will govern the case

Plaintiff asserts two federal causes of action under the Lanham Act and a third cause of action for unfair competition under Texas common law, and Defendants assert that Texas law on this unfair competition claim tracks federal trademark law. Dkt. No. 165 at 14. Consequently, Defendants contend that "the Eastern District of Texas and Central District of California are . . . equally familiar with and capable of applying the governing law, and this factor is neutral." *Id*. Plaintiff does not raise any arguments under this factor. The Court concludes that this factor is neutral.

### h. The avoidance of unnecessary problems with conflict of law

Defendants assert that "[t]here are no issues related to conflict of laws, and this factor is therefore neutral." Dkt. No. 165 at 14. Plaintiff does not address this factor. *See generally* Dkt. No. 171. Consequently, the Court concludes that this factor is neutral.

### i. Plaintiff's additional arguments

Plaintiff argues that this Court has developed an increased familiarity with this case due to the its handling of this matter over time. Dkt. No. 171 at 7–10. Additionally, Plaintiff argues that transfer could change controlling law (*id*. at 11–15).

Plaintiff also argues that significant delay precludes venue transfer. Dkt. No. 171 at 4–7. While this is true as a general proposition, in this case venue transfer is a timely issue as a result of Plaintiff's action in introducing a large number of new defendants into the case. Even if transfer

would cause delay, Plaintiff could have avoided this delay by including these new defendants at the outset of this case. These are factors that weigh against transfer, but not with dispositive weight.

### III. CONCLUSION

Weighing all of the factors together, Defendants have met their burden of showing that a trial in the Central District of California, Western Division would be clearly more convenient than a trial in the Eastern District of Texas. The Court therefore **TRANSFERS** this action to the Central District of California, Western Division pursuant to 28 U.S.C. § 1404(a).

It is further **ORDERED** that all interim deadlines are stayed until the effective date of the transfer of this action to the U.S. District Court for the Central District of California.

**SIGNED this 23rd day of March, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE